James BIGELOW, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 87–0118 (JHP/PJA).

United States District Court, District of Columbia.

Oct. 19, 1988.

Jonathan Smith, Victor Glasberg & Associates, Alexandria, Va., Christopher W. Hornig, Roisman, Reno & Cavanaugh, Robert C. Bernius, Francisco R. Mortero, Nixon, Hargrove, Devans & Doyle, Washington, D.C., for plaintiffs.

Judith R. Rayner, George C. Valentine, Washington, D.C., for defendants.

MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate.

The Detroit News, Inc., owner and licensee of WUSA–TV (Channel 9), seeks leave to intervene in these proceedings in order to vacate a protective order stipulated to by the parties, and approved by the Court, wherein Plaintiffs' counsel agreed to keep confidential certain documents received by them from the Defendant District of Columbia and also to obtain access to certain material filed under seal.

In its memorandum in reply to the Defendant's opposition to its motion to intervene, Channel 9 clarified its request by stating it "seeks *only* access to materials filed with the Court" (P. 1). Moreover, Channel 9 agrees that to the extent the sealed material tends to identify confidential sources of information, such information "may legitimately be protected from public disclosure."

The discovery materials furnished Plaintiffs' counsel consisted of internal Metropolitan Police Department reports of an investigation and evaluation of an unlawful narcotics distribution undercover operation, code named "Operation Caribbean Cruise." None of this material was filed with the Court. Nor were any depositions, answers to interrogatories or responses to requests for production of documents containing alleged confidential or privileged material filed with the Court under seal.

The only Court sealed material consisted of Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery (docket no. 145); Plaintiffs' Reply to Defendants' Opposition to Motion to Compel (docket no. 158); Plaintiffs' Motion for Leave to File Motion in Limine (docket nos. 171 and 173); Plaintiffs' Memorandum in Support of Their Motion in Limine (docket no. 172); and Plaintiffs' Opposition to Defendants' Motion for a Limited Protective Order (docket no. 182).

At the Court's request, counsel for the parties reviewed the sealed documents to determine if they would voluntarily agree to unseal any of this material. Counsel agreed to the unsealing of Plaintiffs' Motion to Compel (docket no. 145), and Plaintiffs' Motion for Leave to File Motion in Limine (docket nos. 171 and 173). Moreover, the Defendants agreed to unseal the remaining pleadings on the condition that a quotation on page 4 of the Plaintiffs' Opposition to the Defendants' Motion for a Protective Order (docket no. 182) be redacted; that the Metropolitan Police Department Internal Affairs Division (IAD) investiga-

tive report be redacted;[1] and lastly, that two quotations found in the Plaintiffs' Reply to the Defendants' Opposition (docket no. 158) be redacted.

### Right to Intervene

Although the defendants' contend that Channel 9 has no standing to intervene, they do not argue that position. Instead, they strongly urge that Channel 9 has no right of access to pretrial discovery material. But this potential issue was later defused when Channel 9 agreed to limit its request to materials filed with the Court under seal.

It is generally recognized that the public has a common law right to inspect and copy judicial records, *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), particularly pleadings and motions upon which the court is called upon to act because it enhances public understanding and promotes public confidence in the judicial system. *Littlejohn v. BIC Corp.,* 851 F.2d 673, 677–78 (3d Cir.1988), *Mokhiber v. Davis,* 537 A.2d 1100, 1112 (D.C.App.1988). That right is generally exercised by filing a motion to intervene pursuant to Fed.R.Civ.P. 24 and usually granted provided it is "timely". *Littlejohn,* 851 F.2d at 677 n. 7; *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325 (D.C.Cir.1985); and *Mokhiber,* 537 A.2d at 1104. There is no question regarding the timeliness of Channel 9's motion, therefore, the motion to intervene will be granted.

### Contentions

The defendants contend that certain portions of the IAD report, and lengthy quotations contained in two of the three remaining sealed motions are expressions of opinion and recommendations and, therefore, are subject to the deliberative process privilege. They also contend that a portion of a footnote containing information that could tend to identify an informer is subject to the law enforcement privilege.

---

**1.** In a supplemental affidavit Chief Turner of the MPD subsilentio withdrew his opposition to all but certain portions of that report.

In support of these assertions, the defendants tender an affidavit from the Chief of Police of the Metropolitan Police Department which states that he has personally reviewed the disputed materials, that he relies on this type of information to help him formulate final decisions, and that the disclosure of the opinions of investigators and the results of their investigations could inhibit future investigations and impair free and frank discussions so vital to the decision making process.

In response, Channel 9 asserts that the information it seeks has been disclosed to plaintiffs' counsel, their staff and expert witnesses and, therefore, the privileges, to the extent they may be applicable, have been waived. Moreover, Channel 9 argues, the defendants' privilege assertion and the affidavit of Chief Turner are vague and conclusory and fail to show just how the information sought to be protected is exempt from disclosure by reason of either privilege.

## Discussion

### The Deliberative Process Privilege

The deliberative process privilege is not absolute, but rather a qualified one. Its application necessitates a balancing of protected intra-governmental advisory and deliberative communications containing frank discussions and exchanges vitally necessary to the decision and policy making process against a demonstrated need for disclosure. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404–05 (D.C. Cir.1984), *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd*, 384 F.2d 979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed. 2d 361 (1967).

In order to properly invoke the privilege, the head of the agency which controls the information must file a formal claim of privilege which shall describe the documents involved, affirmatively state that he or she has reviewed the documents and set forth an assessment of the likely consequences if the information is disclosed. *Northrop Corp.*, 751 F.2d at 405, n. 11.

■ The affidavit of Chief Turner filed as a supplement to the defendants' opposition to Channel 9's motion complies with the requirements for formally invoking the privilege. Nonetheless, it stops short of describing to one who has not seen the document exactly what information is sought to be protected. True, it makes reference to certain paragraphs, but fails to amply describe, at least in general terms, the information sought to be protected and, except in the most conclusory manner, how disclosure would adversely affect the claimed privilege. The affidavit, in so far as Channel 9 is concerned, is so non-specific that it is impossible for it to contravene or challenge Chief Turner's assertions. All the Chief says is I have reviewed this information, it is advisory and I rely on that type of information in arriving at decisions.

These conclusory views, without the benefit of any analysis or discussion by the department head are of little help to the Court or the intervenor. As Channel 9 observed "(a) generalized claim that the requested documents are protected by a common law privilege will not carry the burden (that is) necessary to establish that privilege."

If the Court were limited solely to the affidavit, it would have to agree with the intervenor that the formal claim was insufficient in and of itself to disclose the specifics necessary to support the need for confidentiality. However, this infirmity is not fatal for this Circuit has approved a practice of *in camera* inspection of documents alleged to be privileged thereby allowing the Court to make its own findings. *Northrop Corp.*, 751 F.2d at 401, *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C.Cir.1984). Fortunately, the documents at issue are few and Chief Turner's delineations further limit the area of claimed privilege.

■ An examination of the documents supports, in part, the claim that the information sought to be protected reflects advisory opinions and conclusions of a subordinate to a higher official which will aid the latter in the decision-making process and

allow him to promulgate future policies. However, some of the material sought to be protected contains factual findings and is not the kind of material upon which decisions will be based or policies formulated. That is not to say, that merely because the material contains factual findings or conclusions, that it is not subject to the deliberative process privilege. Indeed, in some situations even so called factual material may reveal the opinion and policy-making thought process so as to make that material privileged, *Mead Data v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir.1977), but that is not the case here.

A review of the material discloses that Sections A2 and 3 as well as Sections C3, 6 and 10 contain factual findings following an investigation. However, this material does not appear to be the type of material upon which decisions will be made or policy formulated. It is too limited and case specific. Nor, do the disputed passages contain any type of "give and take" discussion of facts, investigative techniques or other matters, the disclosure of which would impair or inhibit the ability of the Police Department to conduct future investigations within or outside the department. The same can be said of the information contained in the quotation found in the Plaintiffs' Reply to the Defendants' Opposition to Motion to Compel (docket no. 158) in which Captain Hilbert sets forth his inability to corroborate certain information relied on by an undercover officer. All these materials contain nothing more than specific factual findings which, in the context of these proceedings, is not privileged.

■ Following a review of the remaining sections of the IAD report for which privilege is claimed, I conclude that the balancing tests weigh in favor of nondisclosure and that the privilege was properly invoked. The author of the IAD report discusses matters that involve policy considerations and arrives at specific conclusions and recommendations. These materials clearly fall within the letter and spirit of the deliberative process privilege.

### Law Enforcement Privilege

■ The remaining material under discussion concerns a portion of a quotation from a transcript of an interview with an informant. The Government contends this matter is subject to the law enforcement privilege since its disclosure may inhibit cooperation by other informants and, more importantly, perhaps lead to the identification of the informant and put the informant's safety at jeopardy.

Just as the deliberative process privilege involves a balancing of interests, so does the law enforcement privilege. "The public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *In re Sealed Case*, 856 F.2d 268, 272 (D.C.Cir. 1988).

The intervenor does not press the issue and concedes that if a confidential source may be disclosed and thereby jeopardized, the information may be withheld.

A review of the quotation excerpt reveals that for the most part the information found in the material is innocuous, however, disclosure of the material could possibly be used to identify the source. For that reason, I conclude that the scales are tipped in favor of nondisclosure.

### Waiver

■ Lastly, with respect to all the materials under consideration, the intervenor raised the issue of waiver since the Government voluntarily provided much of the information sought during discovery.

Channel 9 contends, although it does not strenuously argue, that by voluntarily disclosing the documents to the plaintiffs the Government waived its claim of privilege. However, as previously discussed, both the deliberative process and law enforcement privileges are based on a balancing test. In many instances, a party's need to know in order to successfully litigate his case outweighs competing public interest in nondisclosure whereas an intervenor's generalized interest may not. Such is the case at issue.

The fact that the Government sought to protect the public's interest in nondisclosure, but, nonetheless, recognized the plaintiffs need for this information and voluntarily agreed to disclosure to the plaintiffs pursuant to a stipulation that would limit its dissemination should not inure to the detriment of the Government. The Court also has an interest in seeing that the parties voluntarily resolve as many issues as possible during the course of litigation without the necessity of judicial intervention. The Government should not be penalized because of its cooperation in resolving litigation discovery disputes.

### Conclusion

The Court concludes for the reasons stated that the claim of privilege is partially sustained and partially overruled. The claim of privilege is overruled as to Sections A2 and 3, Sections C3, 6 and 10 of the IAD report, and the quotation of Capt. Hilbert found in pleading docket no. 158.

The claim is sustained in all other respects. An appropriate order accompanies this memorandum.

### ORDER

Upon consideration of the motion of Detroit News, Inc. to intervene, vacate the stipulated protective order, and for access to materials filed under seal, it is this 18th day of October 1988

ORDERED that the motion to intervene be, and hereby is, granted. The motion to vacate the stipulated protective order be, and hereby is, denied as moot since none of the discovery material obtained as a consequence of that stipulation has been filed with the Court.

FURTHER ORDERED that the motion for access to materials filed under seal is granted in part and denied in part. On or before October 31, 1988, the plaintiffs shall file duplicate copies of their "Reply Concerning Request (4) of Plaintiffs' Motion to Compel Discovery" (docket no. 158) redacting the quote contained on the bottom third of page 3; and their "Memorandum in Support of Plaintiffs' Motion *In Limine* and Request For Expedited Consideration."

(docket no. 172) redacting the following portions of the Internal Affairs Division investigative report: Section C1, all of Section D, and the two paragraphs following Section E1;

FURTHER ORDERED that the sealed pleadings containing the unredacted material shall remain sealed.

FURTHER ORDERED that the pleading entitled "Plaintiffs' Opposition to DC Defendants' Motion For A Limited Protective Order" (docket no. 182) shall be unsealed and filed in the public record of these proceedings as of November 1, 1988, or until parties comply with the filing of redacted duplicate copies.