**Janice Rector LEYH, Plaintiff,**

**v.**

**MODICON, INC., Defendant.**

**No. IP Misc 95–22–H.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 7, 1995.

Gregory Leyh, Humphrey, Farrington & McClain, Independence, MO, for plaintiff.

Paul J. Murphy, Menard, Murphy & Walsh, Boston, MA, for defendant.

Kathryn Kelley, Indianapolis, IN, for movant EEOC.

## ORDER ON MOTION TO QUASH

HAMILTON, District Judge.

Plaintiff Janice Rector Leyh has sued her former employer, Modicon, Inc., for violating Title VII of the Civil Rights Act of 1964 by discriminating against her on the basis of pregnancy. Modicon has filed a counterclaim. The underlying action is pending in the United States District Court for the District of Massachusetts. The Equal Employment Opportunity Commission ("EEOC") has filed with this court a motion to quash a subpoena *duces tecum* and for a protective order.

Before filing her civil action, plaintiff Leyh had filed the required complaint with the EEOC. For purposes of her civil action, plaintiff now seeks testimony on several subjects from the EEOC investigator who handled her case. Informal efforts to obtain the EEOC's cooperation were unsuccessful. On February 16, 1995, Leyh served a subpoena *duces tecum* on the EEOC for the deposition testimony of EEOC investigator Thomas Murdock and production of documents from his investigation. The subpoena commanded Murdock's presence for a deposition on February 24, 1995, in this district.

On February 23, 1995, the EEOC filed its motion to quash the subpoena and for a protective order. The same day, after conferring with counsel, this court granted the motion to quash to the extent that the deposition scheduled for February 24, 1995, was vacated. The court also set an expedited briefing schedule with which the EEOC and the parties have complied. A prompt decision is called for because Leyh faces a discovery cut-off of March 31, 1995, in the civil action. The matter is now ripe for decision. As set forth below, the doctrine of sovereign immunity does not permit the EEOC to avoid the discovery. However, applying the standards of Fed.R.Civ.P. 26, the court agrees that the discovery should not be per-

mitted and therefore grants the motion to quash.

### Sovereign Immunity

■ The EEOC argues that the doctrine of sovereign immunity prohibits enforcement of the subpoena. The principle of sovereign immunity is well-established for cases where parties sue the government directly for relief. *E.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). The question here is whether the doctrine of sovereign immunity extends to protect a federal agency employee from responding to a subpoena issued by a federal district court commanding testimony and/or production of documents in litigation to which the government is not a party.

The EEOC relies on *Boron Oil Co. v. Downie,* 873 F.2d 67 (4th Cir.1989), in which the Fourth Circuit held that a state court could not compel an employee of a federal agency to testify about matters within the scope of his employment when, pursuant to a valid federal regulation, his superiors had ordered him not to testify. *Boron Oil* relied in turn primarily on *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). There the Supreme Court held that the federal district court could not hold an employee of the Department of Justice in contempt for refusing to comply with the court's subpoena when the Attorney General ordered him not to comply pursuant to a valid regulation concerning release of government documents. 340 U.S. at 467–68, 71 S.Ct. at 418–419.

Like the federal agencies in *Boron Oil* and *Touhy,* the EEOC has promulgated a regulation that prohibits its employees from testifying in response to a subpoena without the approval of the EEOC's chief counsel. *See* 29 C.F.R. § 1610.32. This procedure requiring central approval within an agency helps ensure, before there is a confrontation between executive and judicial power, both that senior executive branch officials will make the decisions and that a court will have ample time for reflection on the issue, without having to hold relatively junior employees in contempt of court. *See Touhy,* 340 U.S. at 468, 71 S.Ct. at 419 (acknowledging that "usefulness, indeed the necessity, of centralizing determination as to whether subpoena *duces tecum* will be willingly obeyed or challenged is obvious"). However, as the Ninth Circuit has held, neither such regulations nor the general "housekeeping" statute that authorizes them (5 U.S.C. § 301) create a privilege that protects federal agencies or their employees from ever being required to provide evidence in federal court. *Exxon Shipping Co. v. United States Dept. of Interior,* 34 F.3d 774, 777–78 (9th Cir.1994). *See also N.L.R.B. v. Capitol Fish Co.,* 294 F.2d 868, 875 (5th Cir.1961) ("housekeeping" statute does not give executive agencies authority to determine whether papers and records are privileged, and does not bar judicial determination of questions of privilege).

In this case, the EEOC has chosen not to base its motion on its regulation. Instead, the EEOC relies on the principle of sovereign immunity to assert a right to refuse to comply with a federal court subpoena. The EEOC's motion thus asks the court to decide a question that *Boron Oil* and *Touhy* did not reach: whether the doctrine of sovereign immunity permits the head of a federal agency to refuse conclusively to permit an agency employee to testify in response to a command of a federal court. In *Boron Oil,* the matter had been filed in state court and removed to federal court. Therefore, the federal district court that ordered compliance with the subpoena could exercise only the power the initial state court had. 873 F.2d at 70 (citing *Arizona v. Manypenny,* 451 U.S. 232, 242 n. 17, 101 S.Ct. 1657, 1665 n. 17, 68 L.Ed.2d 58 (1981)). Under the Constitution's Supremacy Clause, state court power could not override federal regulations. *Id.* at 71. Federal courts exercising the judicial power of the United States do not face the same constraint.

In *Touhy,* the Supreme Court stopped at the employee contempt issue and did not proceed to decide the ultimate sovereign immunity issue. 340 U.S. at 467, 71 S.Ct. at 418–19. In fact, Justice Frankfurter expressed grave concern about the questions

the Court did not reach and the breadth of the power being asserted by the government:

> To hold now that the Attorney General is empowered to forbid his subordinates, though within a court's jurisdiction, to produce documents and to hold later that the Attorney General himself cannot in· any event be procedurally reached would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle.

*Id.* at 473, 71 S.Ct. at 422 (Frankfurter, J., concurring). *See also In re Boeh,* 25 F.3d 761, 766–67 (9th Cir.1994) (reversing contempt orders directed to agent who followed orders and refused to testify, without reaching power of Attorney General to refuse permission to testify), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *id.* at 769–72 (Norris, J., dissenting) (arguing court should reach issue of Attorney General's power and reject assertion of that power).

The parties have cited only one case that directly decides the sovereign immunity issue as the EEOC has chosen to present it here. In *Exxon Shipping Co. v. United States Dept. of Interior,* 34 F.3d 774 (9th Cir.1994), the parties to the civil litigation arising from the Exxon Valdez oil spill sought the testimony of several federal agency employees concerning the effects of the spill. The agency heads refused to allow the testimony pursuant to regulations governing responses to such subpoenas. As noted earlier, the Ninth Circuit first held that 5 U.S.C. § 301, which authorizes regulations like the EEOC's regulation here, does not authorize agency heads to withhold documents or testimony from federal courts. 34 F.3d at 777–78.

The Ninth Circuit then turned to the government's sovereign immunity argument based, like the EEOC's argument here, on the Fourth Circuit's decision in *Boron Oil.* The Ninth Circuit concluded that *Boron Oil* had limited application in the context of a federal court subpoena because that case

dealt with a *state* court's power to compel testimony in violation of valid federal regulations. The Ninth Circuit held that the limitations imposed by the sovereign immunity of the United States and the Supremacy Clause on a state court's subpoena and contempt powers do not apply when a federal court exercises its subpoena power against federal officials. 34 F.3d at 778. The Ninth Circuit then rejected the sovereign immunity claimed by the federal agencies. The court explained that the government's sovereign immunity claim that executive branch officials could make *conclusive* determinations about compliance with federal court subpoenas "would raise serious separation of power questions." *Id.* The Ninth Circuit "decline[d] to hold that federal courts cannot compel federal officers to give factual testimony." *Id. Accord, Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 398 n. 2 (D.C.Cir.1984) (citing cases assuming that sovereign immunity does not apply to federal court subpoenas, and declining "to graft onto discovery law a broad doctrine of sovereign immunity"). *See generally United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed"); *United States v. Reynolds,* 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953) ("judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers").

The doctrine of sovereign immunity does not authorize the EEOC to refuse to comply with a subpoena from a federal court compelling the testimony of an EEOC employee in a civil action to which the EEOC is not a party. In so holding, this court follows the careful analysis of the Ninth Circuit in *Exxon Shipping* holding that the doctrine of sovereign immunity does not authorize a federal agency to refuse to provide discovery in a civil action in federal court. 34 F.3d at 778–79.[1]

---

1. The EEOC also cites two district court decisions in Indiana involving similar questions. In *King v. Uniroyal Plastics Co.,* 54 F.E.P. 349, 1990 WL 258382 (N.D.Ind.1990), the court denied the EEOC's motion to quash non-party discovery requests, although there is no indication that the EEOC raised the sovereign immunity theory

there. In *Dickerson v. Flanner & Buchanan, Inc.,* No. IP 91–1379–C (S.D.Ind. Dec. 17, 1991), the court granted the EEOC's motion to quash a subpoena on grounds of sovereign immunity, but did not cite authority or explain the basis of its decision. This court therefore chooses to follow

The EEOC points out correctly that *Exxon Shipping* and this case arose in different procedural contexts. In *Exxon Shipping*, the parties seeking discovery filed an independent action against the government agencies challenging their decisions to refuse to permit their employees to testify under subpoena. In this case, only the subpoena has been issued. If the EEOC had simply relied on its regulation and its refusal to permit Murdock to testify, it could have forced plaintiff Leyh to pursue that additional procedural step taken in *Exxon Shipping*. For reasons of its own, the EEOC has chosen not to rely on its regulation and instead asserts the much broader claim of sovereign immunity.[2] Because the regulation itself does not establish any sovereign right of the EEOC to refuse to comply with federal court orders, and because the EEOC has not based its motion on the regulation, the differences in the procedural postures of this case and *Exxon Shipping* are not relevant to the sovereign immunity question presented here. The reasoning of *Exxon Shipping* extends to defeat the EEOC's claim of sovereign immunity in this case.

### Rule 26

The fact that the EEOC does not have an *absolute* privilege to refuse to provide evidence does not undermine the serious concerns the EEOC has raised about having its investigators routinely subjected to discovery in employment discrimination cases. As discussed in *Exxon Shipping*, allowing private litigants "unbridled discretion" to call agency employees as witnesses could turn the federal government into a "speakers' bureau for private litigants" or into "tax-supported pools of experts." 34 F.3d at 779. *See also Boron Oil Co. v. Downie*, 873 F.2d at 70 (government has interest in minimizing governmental involvement in controversies unrelated to official business and in preventing loss of manpower and disruption of government business if employees routinely compelled to testify in private litigation). Because virtually any civil action alleging employment discrimination must have gone through the EEOC (or parallel state or local agencies)

before litigation is filed, the EEOC has obvious and well-founded concerns about having its investigators spend their time testifying about old investigations instead of conducting current ones.

■ The answer to these important concerns is not the absolute power asserted by the EEOC under the doctrine of sovereign immunity. Instead the Federal Rules of Civil Procedure give the federal courts ample power and flexibility to prevent or restrict discovery that is obtainable from some other source that is more convenient, less burdensome, or less expensive, or where the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2). Similarly, government privileges such as the deliberative process privilege or state secrets privilege can be and are accommodated when they are implicated by discovery requests. *See, e.g., Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 534, 543–44 (S.D.Ind.1990) (and cases cited therein).

After a review of the parties' submissions, the court concludes that the discovery plaintiff seeks from Murdock should not be permitted. In making this determination, the court has considered the factors in Rule 26 most pertinent here: whether the information sought is reasonably calculated to lead to the discovery of admissible evidence; whether the information is obtainable from another source that is more convenient or less burdensome; and whether the benefits of the proposed discovery outweigh its burdens, taking into account the needs of the case and the relative importance of the proposed discovery in resolving the issues.

■ Plaintiff wants to depose investigator Murdock about his recollection of facts he turned up in his investigation of plaintiff's complaints. The court agrees with the EEOC that a protective order should be granted to prevent such inquiries. Testimony from Murdock about the results of his investigation would not, as a general rule, be admissible in a trial of the underlying facts.

the recent and detailed discussion of the issue in *Exxon Shipping*.

2. The EEOC did not even cite the regulation until its reply brief.

He is not a fact witness on plaintiff's claims. It is possible, of course, that representatives of Modicon made admissions against the company's interest such that Murdock's testimony about such admissions could be admissible. Moreover, Rule 26 certainly allows discovery of matters reasonably calculated to lead to the discovery of admissible evidence. To the extent plaintiff hopes to develop new leads on witnesses, such questioning might lead to the discovery of admissible evidence.

Despite the generally permissive approach to discovery in the federal courts, the court does not believe that parties to an employment discrimination case should be able to depose EEOC investigators as a matter of course. Such depositions should not become a routine method to find a short-cut to evidence or to being given pre-packaged cases. It is beyond the scope of this case to catalog the exceptional circumstances that might warrant such discovery, but there are no such exceptional circumstances here.[3] While such depositions might save private litigants some time and money, there is a larger public interest here. The EEOC has plenty of work to do investigating new complaints, and its principal responsibility is to serve the public as a whole, not to work for the benefit of particular litigants. Accordingly, the court finds under Rule 26(b)(2) that plaintiff should not be permitted to depose Murdock on the facts that he turned up in his investigation of plaintiff's claims. The underlying facts relating to her claims are matters that are obtainable from other sources that are more convenient and less burdensome to the public interests at stake here. The possibility that the investigator might testify about admissions by the opposing party would be present in any case and is not sufficient to outweigh the burden of subjecting the EEOC to depositions of its investigators as a matter of course.

■ The parties briefs' and correspondence and affidavits also show that Murdock should not be required to give testimony concerning the EEOC's decisions or deliberations concerning its investigation of plaintiff's claims. First, those matters simply are not relevant to the central issue in this case—whether defendant discriminated against the plaintiff. Second, those matters would be protected, upon appropriate motion by the EEOC, under the deliberative process privilege. *See, e.g., Government Suppliers Consolidating Services, Inc. v. Bayh,* 133 F.R.D. 531, 534 (S.D.Ind.1990) (privilege available to federal executive branch and to state officials). In her brief, plaintiff argues that the EEOC has not taken the procedural steps to invoke the deliberative process privilege. *Cf. Government Suppliers,* 133 F.R.D. at 544 (official must make formal claim of privilege after personal review of documents, and must specifically identify documents or information and give precise reasons for preserving confidentiality); *Bigelow v. District of Columbia,* 122 F.R.D. 111, 113 (D.D.C.1988) (agency head must file formal and detailed claim of privilege concerning documents). This argument, however, is not at all persuasive in view of plaintiff's repeated assurances to the EEOC that she was not seeking testimony or documents on the EEOC's internal deliberations. Plaintiff is not entitled to depose Murdock to inquire into the EEOC's internal deliberations and decision-making.

■ As a third subject for deposing Murdock, plaintiff seeks information relevant to a counterclaim recently pleaded by defendant Modicon. Plaintiff's and Modicon's briefs to this court have devoted considerable effort to persuading this court to agree with their respective views on the merits of this counterclaim. That is not the issue here. The issue is whether, in light of all the circumstances, it is reasonable for plaintiff to seek testimony from Murdock on issues relating to the counterclaim.

Explaining the counterclaim requires brief attention to the nature of plaintiff's claims. Plaintiff Leyh was a district sales manager

---

**3.** Plaintiff relies on *Allen v. Hearst Corp.,* Nos. WN–90–35, WN–90–3012, 1991 WL 323020 (D.Md. Aug. 16, 1991), in which the parties conducted a "lengthy deposition" of the EEOC's principal investigator. In that case, however, the EEOC appears to have been a party itself, and the plaintiff intended to try to introduce at trial the EEOC's finding of probable cause. The relevant considerations are very different when the EEOC is not a party to the litigation in which discovery is sought.

for Modicon. Before July 1, 1990, she was eligible for bonus payments based on certain individual sales goals. Beginning July 1, 1990, Modicon changed its bonus plan to calculate bonuses for a six-month period based on team performance rather than individual performance. After about a month of work under this team bonus plan, plaintiff left work for a seven month leave of absence, during which she gave birth. Modicon apparently paid plaintiff all her base salary and benefits during this leave, but there was a dispute over the calculation of plaintiff's share of the team bonus for the second half of 1990. Plaintiff claims that Modicon discriminated against her on the basis of her pregnancy and gender in calculating that bonus payment, and Modicon denies that charge.

That brings us to the counterclaim. Modicon alleges that when plaintiff first learned she would be getting a smaller bonus than she expected, she complained inside the company. The counterclaim alleges that Modicon decided to offer Ms. Leyh "a compromise . . . purely in an effort to settle her claims." Paragraph 14 of Counterclaim. After explaining some details of its calculations, Modicon then alleged: "Under Modicon's compromise, Ms. Leyh was offered and accepted, payment of $20,398.63 . . . ." The counterclaim seeks repayment from plaintiff of the $8,412.79 difference between the bonus Modicon originally calculated and the higher amount paid under the alleged "settlement," as well as costs and attorney's fees.[4]

The papers submitted by the parties show a substantial dispute over whether Leyh ever agreed to such a "compromise" or "settlement." The question here is how this dispute affects Murdock and the EEOC. In the Massachusetts district court, plaintiff opposed amendment of Modicon's answer to add the counterclaim, arguing the counterclaim had no factual basis and saying Modicon had sat silently for nearly four years without claiming anyone that the parties had

reached a "compromise" or "settlement" of the claims. Modicon responded by claiming it had told the EEOC that it had overpaid plaintiff. Plaintiff's counsel has submitted an affidavit saying that he has spoken with Murdock, and that Murdock told him "that he was never informed by defendant Modicon of any previous 'settlement' or 'compromise' with the plaintiff." Affidavit of Gregory Leyh ¶ 8. In its reply brief, the EEOC has submitted non-privileged documents from the file of the EEOC attorney who worked on Leyh's case.[5] The EEOC argues those documents show Murdock was wrong and that Modicon did tell the EEOC of the alleged settlement. Those documents include a letter from Modicon's counsel to the EEOC dated February 10, 1992, in which Modicon argued that it had paid plaintiff more than she was entitled to receive. Also, Modicon has submitted a copy of a letter from its counsel to the EEOC dated August 9, 1991, also asserting that it had paid Ms. Leyh more than she was entitled to be paid.

The parties' arguments concerning these letters simply pass in the night. The correspondence from Modicon to the EEOC shows that Modicon defended itself by arguing it paid Ms. Leyh more than it was legally required to pay her. The correspondence does not, however, contain any claim by Modicon that Ms. Leyh had "settled" or "compromised" her claim for a higher bonus. That is consistent with Mr. Murdock's recollection, as related by plaintiff's counsel in his affidavit. There is a wide gulf between Modicon's rhetoric of "overpayment" and an assertion that the complaining party has in fact and in law reached an accord and satisfaction on her claims.

It is not the responsibility of this court to decide or even to suggest the resolution of this counterclaim. The question here is whether plaintiff may take Murdock's deposition in an effort to defend against the counterclaim. Plaintiff wants to show Modicon

---

4. From the requests for relief it is unclear whether Modicon wants to enforce the alleged settlement or to rescind it; perhaps Modicon has not yet made up its mind on that question.

5. The original investigative file on plaintiff's complaint was apparently destroyed in the ordinary course of business in February 1994. The attorney's file contains copies of a few documents that probably came from the investigative file. *See* Affidavit of Michelle Eisele.

never told the EEOC about the alleged compromise and settlement. Such evidence would probably not be relevant and admissible unless and until a witness testified that Ms. Leyh had reached a settlement with Modicon, then Ms. Leyh charged the witness with "recent fabrication," then the witness asserted that he or she had told the EEOC of the alleged settlement, to which plaintiff would hope to respond with what she hopes would be Murdock's testimony that Modicon did not tell the EEOC of any settlement.

While this sequence of events at trial is possible, there is nothing in the (by now fairly extensive) factual record suggesting that any witness for Modicon would ever testify that he or she told the EEOC that Ms. Leyh had actually "settled" her claims. The closest anyone come to that is an affidavit from Modicon's counsel saying that he took the position "that Modicon had *in effect* negotiated with Ms. Leyh ..., had reached a compromise with Ms. Leyh ..., and believed that any disputes with her concerning the subject had been resolved." If one could imagine trial counsel taking the witness stand at trial to make this argument, Murdock's testimony on this point might be useful, assuming he could recall the matter in sufficient detail. But there is no indication that the counsel has personal knowledge such that he would be taking the witness stand to support the allegation of a settlement. Moreover, counsel's affidavit stops well short of actually claiming he told the EEOC that Leyh had agreed to what the law would recognize as an accord and satisfaction of her claims. Accordingly, the remote possibility that Murdock's possible testimony about his conversations with Modicon's lawyer could be used to impeach other witnesses is not a sufficient basis to subject the EEOC investigator to a deposition in this case.

■ Plaintiff also wants to ask Murdock about his interview with a male district sales manager whose treatment plaintiff wants to compare to her own. Plaintiff says that the male district sales manager told her in 1991 that he was absent from work for medical reasons for eight to ten weeks in 1990, and he allegedly received 100% of his bonus. Plaintiff's counsel says he has interviewed this witness, who now says he does not remember how long he was absent from work for medical reasons in 1990. Plaintiff would like to have Murdock testify about his interview with this witness in hopes that Murdock will remember what the witness told him, and plaintiff might then use the answer as an admission of Modicon to offer it into evidence. This chain of reasoning is not sufficient to justify the intrusion of a deposition of Murdock. One of the factors a court should consider under Rule 26(b)(2) is whether the same information is likely to be available elsewhere with less of a burden on all concerned. Plaintiff says nothing about Modicon's records of this sales manager's work, which, as a practical matter, are likely to be considerably more reliable than Murdock's possible recollection of what the sales manager may have told him several years ago. Accordingly, this matter is also not sufficient to warrant a deposition of Murdock.

Finally, plaintiff seeks production of certain EEOC documents, including "sign-in logs" and other administrative documents. Nothing suggests that these documents would be relevant to the underlying case or would otherwise be reasonably calculated to lead to the discovery of admissible evidence. The EEOC need not produce them.

## CONCLUSION

The doctrine of sovereign immunity does not support the EEOC's motion to quash and for a protective order. However, applying the standards of Fed.R.Civ.P. 26, the court concludes that the requested discovery should not be permitted. The subpoena *duces tecum* served on Murdock is hereby quashed, and plaintiff may not depose Murdock without his consent.

So ordered.