Shirley A. LANG, Stephanie A. Flaig, Betty J. Ranthum, Patricia J. San Fillippo, Karen Kowalewsky, Robin Hall, Carolyn McGowan, Florance Bingner, Judy Schroeder, Julie Bullen, Kathleen A. Tice, Christine Schanning, Elaine Krawczyk, Leah Ludin, and Jeanne Ring, individually and on behalf of all others similarly situated, Plaintiffs,

v.

KOHL'S FOOD STORES, INC. and The Great Atlantic & Pacific Tea Company, Inc., Defendants.

No. 98–C–0351–C.

United States District Court,
W.D. Wisconsin.

Nov. 23, 1998.

Charles Barnhill, Miner, Barnhill & Galland, Madison, WI, for plaintiffs.

Jack D. Walker, Melli, Walker, Pease & Ruhly, Madison, WI, for defendants.

## ORDER

CROCKER, United States Magistrate Judge.

The Equal Employment Opportunities Commission, which is not a party to this lawsuit, has filed a motion to quash subpoenas served on it by defendants. Defendants wish to review EEOC documents and to depose EEOC employees to test the veracity of affidavits provided by EEOC employees swearing that the EEOC reopened its investigation of plaintiffs' allegations for the purpose of reconsidering the merits of the case. Put more bluntly, defendants want the opportunity to prove that EEOC employees have lied under oath in order to save plaintiffs' Title VII claims from dismissal for having blown the statute of limitations. For the reasons stated below, the EEOC's motion to quash is granted.

## Facts

In September 1996, four of the named plaintiffs filed sex discrimination charges under Title VII against defendant Kohl's Food Stores, Inc. with the EEOC. Kohl's responded, and the EEOC began an investigation of plaintiffs' claims.

In August 1997, the EEOC issued a preliminary determination that Kohl's had not violated plaintiffs' rights under Title VII of the Equal Pay Act. The EEOC invited plaintiffs to submit anything further that might change this preliminary determination. The plaintiffs submitted additional information, but to no avail: on September 30, 1997, the EEOC confirmed its "no cause" determination and issued right-to-sue letters. Pursuant to 42 U.S.C. § 2000e–5(f)(I), plaintiffs then had 90 days, that is, until December 29, 1997, within which to file a lawsuit on their claims.

On October 23, 1997, Kohl's filed a FOIA request with the EEOC requesting production of the EEOC's investigative files. On November 17, 1997, the EEOC granted the request in part and denied it in part and advised Kohl's of its right to appeal this decision. Kohl's did not appeal the EEOC's decision to withhold certain parts of the file.

Following the EEOC's "no cause" determination, some of plaintiffs' attorneys urged the EEOC to reconsider its decision and reopen the case. Pursuant to 29 CFR § 1601.21(b), the EEOC may reconsider its determinations. Plaintiffs' attorneys met with Nancy A. Sienko, the EEOC's principal investigator on the case, twice in November, 1997. Two of plaintiffs' attorneys, Michael Jackelen and Nola Hitchcock Cross, met with Chester V. Bailey, the EEOC's District Director, once in November, 1997. On December 19, 1997, the EEOC issued notices of reconsideration. Pursuant to § 1601.21(b)(1), the EEOC's decision to reopen its investigation within 90 days of its first decision had the effect of vacating the December 19, 1997 deadline for filing suit.[1]

---

1. Whether this court should honor the EEOC's decision to reconsider and to vacate the original deadline to file suit is the issue raised in defendants' summary judgment motion. I will discuss this more below. The facts found in this order simply reflect what occurred historically.

Prior to the EEOC reaching a decision on redetermination, plaintiffs' attorneys asked that the EEOC simply issue right to sue letters. The EEOC granted this request and issued new right-to-sue letters on February 25, 1998 and March 3 1998. Because of weekends and holidays, the first 90 days within which to file suit would have expired on May 26, 1998. Plaintiffs filed their complaint against Kohl's in the instant lawsuit on May 15, 1998, alleging violations of Title VII, among other things.

After answering the complaint, on August 20, 1998, Kohl's and its codefendant, The Great Atlantic & Pacific Tea Company, Inc. moved for summary judgment on plaintiffs' Title VII claims, arguing that they were time barred because plaintiffs filed their lawsuit more than ninety days after the EEOC issued the *"operative* right-to-sue notices." Defendants' Motion for Partial Summary Judgment, Dkt. 14, emphasis added. In their supporting memorandum, Defendants argued that although plaintiffs' Title VII claims appeared timely on their face, closer scrutiny of the administrative record revealed that this was not really the case. Defendants' Memorandum in Support, Dkt. 15 at 1. In their brief, defendants accused plaintiffs of attempting to circumvent the 90 day limitations period by improperly requesting that the EEOC revoke and re-issue its right-to-sue letters. Defendants argued that the case law clearly forbade plaintiffs from attempting to manipulate the 90 day limitation period.

In support of their claim of improper manipulation, defendants outlined the EEOC's extensive investigation prior to its issuance of the first right-to-sue letter on September 30, 1997, then pointed out that the EEOC's case logs contained no entries—or at most one entry—thereafter, despite the EEOC's ostensible reconsideration of the case. Defendants also pointed to a February 16, 1998 letter written by attorney Hitchcock Cross to Director Bailey which stated in its entirety:

I am writing to thank you for your assistance on the referenced cases. By rescinding the "right-to-sue" letters for further administrative proceedings, we have the opportunity to transition the cases to the Chicago firm which handled the Dom-

ic's [*sic* ] Grocery Store case in the Chicago area.

It may also be that once they took a look at it, the EEOC region may renew their interest and involvement. I will keep you informed as to the progress. Please let me know if you wanted to meet again regarding these cases.

Again, thank you so much for your assistance and interest.

Defendants' Proposed Findings of Fact, Dkt. 16, Exh. M to the affidavit of Daniel H. Daley (Exh. 2). Defendants contended that this letter is the proverbial smoking gun proving that the EEOC's purported reconsideration of plaintiffs' claims was merely a subterfuge by which the EEOC could accommodate plaintiffs' wish to switch lawyers prior to filing their suit in federal court.

Defendants' summary judgment motion and proposed findings of fact prompted a September 10, 1998 response by plaintiffs that included an affidavit sworn out by EEOC investigator Sienko. Plaintiffs' Responses to Defendants' Proposed Findings of Fact, Dkt. 24, Exh. 2. Sienko stated that in November, 1997 she was called into a meeting between district director Bailey and two lawyers for plaintiffs, Cross and Michael Jackelen. In the meeting Bailey told Sienko that he was going to reopen plaintiffs' EEOC cases in their entirety to allow EEOC's Equal Pay Act expert at headquarters to review the claims to determine if further action should be taken. Sienko further stated:

6. On November 20, 1997 at 4:05 p.m. I had a detailed telephone conversation of these cases with the Agency EPA expert, Diana Johnston.

7. I related to the District Director the substance of my telephone conversation with Ms. Johnston and the cases were re-opened, effective December 17, 1997.

8. I was informed by the District Director that he thereafter telephoned Ms. Johnston to discuss the case files.

9. Prior to a decision being made with respect to the reopened cases, the office received from the Charging Par-

**528**

ties' attorney, Steve [*sic*] Jackelen, a written request dated February 18, 1998 for issuance of a Notice of Right to Sue on behalf of each Charging Party.

*Id.*

On September 21, 1998, defendants filed a reply memorandum that challenged the adequacy of Sienko's affidavit. Defendants proclaimed that

There is only one affidavit that could adequately refute the inescapable inference from the record that the notices were rescinded to allow the plaintiffs to circumvent the limitations period—an affidavit from the person responsible for the rescission, EEOC District Director Chester Bailey. But conspicuously absent from the plaintiffs' response is any affidavit from Director Bailey.

Defendants' Reply Memorandum, Dkt. 30, at 1. Defendants argued that the "glaring absence" of Bailey's affidavit implied that Bailey would not support plaintiffs' claim that the EEOC had re-opened the cases for genuine reconsideration. *Id.* at 8–9.

Plaintiffs took the bait. On September 30, 1998, plaintiffs moved for leave to file an amended response to defendants' summary judgment motion, which included an affidavit from Bailey. Bailey's affidavit states as follows:

1. I am currently employed by the [EEOC] as the District Director for the Milwaukee District Office.

2. I am the person authorized to issue Determinations on behalf of the EEOC after the investigation of the charges of employment discrimination filed by [plaintiffs in this case].

3. Nola Hitchcock Cross and Steve [*sic*] Jackelen met with me in November 1997 to request reconsideration of the no cause dismissal issued in these cases on September 30, 1997.

4. After the November, 1997 meeting, I determined that it was appropriate to reopen the above cases in their entirety.

5. The revocation of the Notice of Right to Sue and reopening of the charges was undertaken for the purposes of reconsideration of the merits of the charges.

6. There was deliberation and consultation by me with local and headquarters staff on the merits of the cases after they were reopened.

7. While the cases were under reconsideration but prior to a decision being made with respect to the reopened cases, the office received from the Charging Parties attorney, Steve [*sic*] Jackelen, a written request dated February 18, 1998 requesting issuance of a Notice of Right to Sue on behalf of each charging party.

8. Based on this request, I again directed the cases be closed.

Bailey Affidavit, Attached to the undocketed Plaintiffs' Amended Responses to Defendants' Proposed Findings of Fact.[2]

On October 8, 1998, defendants filed their objection to plaintiffs' motion to amend their response. Dkt. 34. Defendants labeled Bailey's affidavit as an eleventh hour attempt by plaintiffs to stave off summary judgment. Defendants argued that the affidavit was contrary to the documentary evidence and raised questions that warranted further discovery as to the EEOC's actions with respect to the plaintiffs' charges. *Id.* Defendants argued that Bailey's affidavit was suspect because it contained no evidentiary foundation for the assertions that the EEOC intended to reconsider and actually did reconsider the merits of plaintiffs' charges after September 30, 1997. *Id.* at 2. Defendants pointed to the time gap between Bailey's meeting with plaintiffs attorneys in November and Bailey's issuance of a reconsideration notice December 19, 1997, and to the "thank you" note from plaintiffs' attorney to Bailey to call into question Bailey's motivation "*at the time he made the revocation decision.*" *Id.* at 3, emphasis in original.

2. The Clerk has not docketed this document because the court has not yet granted plaintiffs leave to file an amended response. I am doing so here. Leave to file an amended response is granted and the clerk may docket this document and the attached affidavit.

Defendants then claimed the need for discovery from the EEOC "as to what actions the EEOC took after it issued the initial right-to-sue notices, when and why it took such actions, and what reconsideration, if any was actually intended or done by the Commission." *Id.*

Virtually simultaneously with their submission to the court defendants served subpoenas on Director Bailey for document production and for deposition testimony. On October 20, 1998, defendants served a deposition subpoena on Investigator Sienko. On October 26, 1998, the EEOC filed motions to quash all of these subpoenas. Dkt. 36. Among other things, the EEOC asserted the "deliberative process" privilege against having to provide the requested information.

On November 3, 1998, defendants responded. Among other things, defendants opposed the EEOC's privilege claim because the EEOC's Chairwoman was the only person qualified to assert the privilege and she had not done so.

The last shoe dropped on November 13, 1998, when Ida L. Castro, Chairwoman of the EEOC submitted her affidavit. Dkt. 51. Chairwoman Castro stated, among other things, that she had reviewed defendants' subpoenas against her employees and the relevant portions of defendants' briefs arguing in support of their subpoenas. Chairwoman Castro stated:

4. In the affidavits of Chester Bailey, District Director, and Nancy Sienko, Investigator, submitted to the court, the EEOC has informed defendant who made the decision to reconsider the determinations in the above-referenced charges. Any additional information sought in the depositions relates to pre-decisional analyses, advice, recommendations, and conclusions by EEOC supervisors, investigators, and attorneys regarding discrimination charges investigated by the EEOC.

5. I conclude that the disclosure to individuals outside the EEOC of information relating to deliberative processes, such as pre-decisional analyses, advice, recommendations, and conclusions about charges, the reconsideration of determination, and the filing of lawsuits would inhibit the free expression of opinions by EEOC employees. Such disclosure would materially impair the EEOC's ability to enforce the statutes within its authority and responsibility.

5. [*sic*] For the reasons stated above, I hereby claim, on the EEOC's behalf, the governmental deliberative process privilege with respect to discovery inquires in the [instant] lawsuit that request information regarding the EEOC's pre-decision analyses, advice, recommendations and conclusions.

Castro Declaration, Dkt. 51.

## Analysis

The only question before the court is whether to grant the EEOC protection from defendants' subpoenas. As I indicated at page one of this order, the answer to this question is "yes." There are two interrelated reasons for this. First, the burden of obtaining the evidence far outweighs any marginal relevance it might have to defendants' summary judgment motion. Second, the EEOC's claim of deliberative process privilege is well taken.

### 1. Relevance versus Burden

█ Let's start with a critical point that defendants are forced to concede on the first page of their summary judgment brief: plaintiffs Title VII claims are timely on their face. Plaintiffs filed their claims within 90 days of the EEOC's issuance of the second set of right-to-sue letters. Those letters were generated by the EEOC in conformance with the applicable regulation, 29 CFR § 1601.21(b) and had the effect of vacating the first right-to-sue letter. *See* 29 CFR § 1601.21(b)(1). This could be—and in most cases would be—the end of the story.

Not so fast, cry the defendants: there are some circumstances here that make the EEOC's decision to reconsider suspect. Defendants point to the curious post-September silence of the EEOC's case logs, the delay between Director Bailey's November meeting with plaintiffs' attorneys and his December issuance of the reconsideration letter, and attorney Cross's "thank you," that men-

tioned "transitioning" the cases to new counsel.[3] Although they don't phrase it quite so baldly, defendants consider these three circumstances evidence of a conspiracy between the EEOC and the plaintiffs to evade § 2000e–5(f)(1)'s ninety day filing limit to buy plaintiffs some time to get their act together before coming to federal court. It's a neat theory; not exactly compelling, but not totally implausible, either. Stranger things have happened in the offices of federal officials. Reasonable minds could differ on what to do with this evidence; defendants decided that it was strong enough to justify taking a stab at a motion for summary judgment, notwithstanding the burden of persuasion imposed on them by Rule 56(c), Fed. R.Civ.Pro. Nothing ventured, nothing gained.

Plaintiffs responded by submitting affidavits from Investigator Sienko and attorney Jackelen, who both swore that there were meetings, there was deliberation, and that the decision to reconsider was legitimate. As noted in the facts, defendants replied that these affidavits were insufficient to disprove defendants' challenge on the basis of even more circumstantial evidence to the facially valid decision of the commission. Defendants argued that only Director Bailey could offer valid insights into the EEOC's decision to reconsider.

Director Bailey weighed in with an affidavit confirming that his decision was not a subterfuge designed to assist plaintiffs in evading the statutory time limits. This led defendants to claim that they were now entitled to depose Bailey and Sienko because they had interposed themselves in this lawsuit, taken sides, and partially waived the Commission's deliberative process privilege. *See* Defendant's Brief in Response, Dkt. 41, at 5–6.

What started as an apparent long-shot defense motion challenging a facially valid reconsideration decision by the EEOC has escalated into defendants' demand for depositions of a line investigator and a high-ranking government official so that defendants can test the veracity of their sworn statements that they followed the regulations. Although defendants claim otherwise, the only purpose for allowing further discovery on this point is so that defendants call try to prove that Sienko and Bailey lied in their affidavits. Nothing else could help defendants at this point, although not even a recantation would salvage their summary judgment motion at this juncture.

There are situations in which this court would allow such an attempt at impeachment, but this isn't one of them. The facts supporting defendants' claim of a subterfuge were less than compelling to begin with and have lost whatever vigor they had in the face of the Bailey, Sienko and Jackelen affidavits. If this court were to allow defendants's discovery of the EEOC, there are four possible outcomes. Either there will be additional documents supporting defendants' claim of impropriety or there won't; and either the deponents will stick to their sworn affidavits or they won't.

Defendants have made no showing that there are documents out there that would directly support their claim of a subterfuge. It appears that at best, the absence of EEOC documents would support their claim that no deliberations occurred. At best, this would undermine the credibility of the sworn affidavits, but it could not refute them: the absence of documents—or even the presence of contradictory documents—would not prove that the EEOC did not intend to reconsider plaintiffs' case. The best the defendants could hope for would be to uncover competing evidence on facts material to their motion. Summary judgment could not be granted on this basis.

As for the depositions, defendants have made no showing that Bailey or Sienko are likely to recant their affidavits and confess to accommodating plaintiffs improperly. At best, skillful questioning would greatly impeach the witnesses' credibility, so that a fact

---

**3.** In the second sentence of her letter, Cross dangles the prepositional phrase, thus obscuring the sentence's meaning. Defendants take the sentence to mean that the EEOC rescinded its right-to-sue letters fore the sole purpose of giving plaintiffs the opportunity to obtain new counsel.

The sentence could also mean that the EEOC's independent decision genuinely to reconsider had allowed plaintiffs' attorneys the opportunity to pass the case to new counsel. Given the first sentence of the second paragraph of the letter, the latter interpretation is more logical.

finder might choose not to believe their statements. But this would not help defendants obtain summary judgment on plaintiffs' Title VII claims because the court cannot make credibility determinations at this juncture.

Additionally, this scenario would require adding yet another step to the summary judgment process: a live evidentiary hearing in front of the court. It would be virtually impossible for a judge to make a credibility determination from a deposition transcript, or even from a videotape. But to state the procedure is essentially to refute it: federal courts do not routinely hold evidentiary hearings to determine witness credibility on facts material to a summary judgment motion. Perhaps it could be done, but there is no reason to do it here.

Keep in mind that defendants are hanging their summary judgment hat on the 90 day filing requirement. The statutory filing deadline is an important condition precedent, but it is not a jurisdictional prerequisite and it is subject to equitable modification. *Perkins v. Silverstein*, 939 F.2d 463, 469–70 (7th Cir.1991), citations omitted. So, absent clear proof—not speculative inference—of an improper collusion between the EEOC and plaintiffs, how could this court throw out plaintiffs' Title VII claims when ·they did everything that was required of them by the statute? *Cf. Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150–51, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (listing circumstances where equitable tolling would be appropriate). It does not matter if plaintiffs' ulterior motive for seeking reconsideration was to extend the filing deadline because it was up to the EEOC, not the plaintiffs, to decide whether to reconsider. (Defendants make this same point in their summary judgment reply brief, Dkt. 30 at 2). Once the EEOC chose to do so, in compliance with the letter of all the applicable statutes and regulations, the plaintiffs were entitled to rely on that choice.

Defendants might respond that this misses their entire point: that the EEOC's decision, while letter perfect, was bankrupt in spirit because it was done for no purpose except to allow plaintiffs to evade the filing deadline. If this were the case, then defendants might be forgiven for believing that this court's application of equity in *favor* of plaintiffs would be ironic lunacy. On this issue, at least, defendants undoubtedly see themselves as more sinned against than sinning.

Defendants, however, based their motion on a permissible but non-exclusive inference that has virtually evaporated in the face of the responsive affidavits. While anything is possible, defendants' evidence is simply not strong enough to overcome the presumption that the EEOC followed the rules, particularly where the EEOC employees directly involved have sworn that this is the case. Absent unequivocal proof of the alleged anti-Kohl's cabal—which does not appear to be obtainable from the requested discovery—the equities weigh in favor of the presumption that the government agency acted according to its own regulations.

So, it is extremely unlikely that defendants will obtain anything useful to the issue for which this discovery is sought. On the other side of the balance, the burden to the EEOC outweighs any benefit to defendants under even their best-case scenario.

Although defendants are persuaded that the EEOC is in plaintiffs' camp, the EEOC is not a party to and has no interest in this lawsuit. Its job is done and it has moved onto other matters. The EEOC proffers that its Milwaukee Office received 2,641 complaints last year. Regardless of the numbers, the EEOC has better uses for its limited resources than to produce the requested documents and take two of its employees away from their desks for half a day each to defend their past actions in this closed case. Defendants might reasonably argue that the EEOC probably had better things to do last fall than re-open an investigation it had already pronounced dead just to re-close it again. But even assuming, *arguendo*, that that decision was a questionable allocation of resources, it can't be helped anymore. This court can, however, spare the EEOC the burden of being second-guessed by litigants unhappy with its processes and decisions. *See, e.g., Leyh v. Modicon, Inc.*, 881 F.Supp. 420, 424 (S.D.Ind.1995). Following this course is not letting the EEOC have it both ways because in this case on these facts the defendants have not shown and cannot show

that they will obtain anything genuinely useful to their summary judgment motion.

Finally, the EEOC has a valid policy point: if this court allows the requested discovery of the EEOC by defendants in this circumstance, when will such requests ever again be denied? Any disgruntled litigant could drag the EEOC back into a subsequently-filed lawsuit in order to second-guess its decisions and procedures in an attempt to deep-six the lawsuit at the outset. While there is nothing wrong with a well-grounded motion to dismiss or for summary judgment, the EEOC should not be available for depositions or document production just so a litigant may verify or rule out its hunches or suspicions. To allow such discovery on the facts presented here would be to open the sluice gates and flood the valley.

Weighing the marginal relevance of the information sought to the defendant's summary judgment motion against the demonstrable burden on the EEOC, I find that the burden of compliance with defendant's subpoenas is, under the circumstances, undue. So, the EEOC is entitled to protection under Rule 45(c)(3)(A)(iv) without regard to its claim of privilege.

## 2. The Deliberative Process Privilege

■■ I also find that the EEOC's claim of deliberative process privilege is well-taken. The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993), citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150–52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Because frank discussion of legal and policy matters is essential to the decisionmaking process of government agencies, communications made prior to and as part of an agency, determination are protected from disclosure. *Id.* The privilege does not apply to communications made subsequent to the agency's decision. *Id.* The privilege may be overcome by a sufficient showing of particularized need outweighing the reasons for confidentiality. *Id.* The privilege should be applied as narrowly as consistent with efficient government operation. *Id.*

■ As a preliminary matter, defendants argue that the privilege cannot apply because the EEOC's deliberations are squarely at issue in this case. This is incorrect. Defendants have set up a straw man just to knock him down. They don't like what happened with the reconsideration letters, they suspect that the fix was in, and they think that the EEOC is deliberately stonewalling them in order to hide its malfeasance. Defendants are entitled to this opinion, but their opinion does not put the EEOC's deliberations squarely in issue in this lawsuit. As noted at various places above, the evidence shows that the EEOC followed the applicable statutes and regulations and that the plaintiffs filed this lawsuit within the statutory filing deadline. Defendants challenged the regularity of this facially valid application of a nonjurisdictional filing deadline. They have no direct evidence to support their challenge. The whole point of their challenged subpoenas is to attempt to generate such evidence. The EEOC is not a party to this lawsuit. This is simply not enough. Defendants' desire to pull the EEOC back into this lawsuit in order to attack a facially valid extension of the filing deadline does not remove this issue from the periphery of this case.

Next, defendants argue that the EEOC has not met its burden of showing that privilege applies. Again, this is incorrect. In his affidavit, Director Bailey stated that in response to plaintiffs' request, he determined that it was appropriate to reopen plaintiffs' cases, and that he thereafter consulted and deliberated with local and headquarters staff. Bailey did not reveal the content of these consultations and deliberations.

In her affidavit, Chairwoman Castro stated that the additional information sought by defendants regarding this decision related to decisional analyses, advice, recommendations and conclusions by EEOC personnel regarding plaintiffs' discrimination charges. She further concluded that disclosure of this predecisional process would inhibit the free expression of opinions by her employees and would materially impair the EEOC's ability to enforce the statutes within its authority and responsibility.

These affidavits, undoubtedly crafted by the EEOC's attorneys, press all the right buttons to allow invocation of the privilege.

Defendants' claims to the contrary are not well taken.

Next, defendants argue that the EEOC has waived its ability to claim the privilege by intervening in this lawsuit voluntarily and by partially disclosing its deliberative processes. The Bailey and Sienko affidavits do not show that the EEOC has intervened and taken sides in this lawsuit, they do not constitute a partial, unfair waiver of the privilege, and defendants' need for this evidence does not outweigh the EEOC's need to safeguard its deliberative processes.

As the EEOC points out, it was defendants' summary judgment motion that prompted its employees to file affidavits. Bailey didn't file his affidavit until the defendants essentially dared him to. Once Bailey accepted defendants' invitation, they pounced, accusing him of voluntarily engaging in a selective waiver of the privilege that entitled defendants to depose him. I disagree. Defendants, despite their pro forma protestations to the contrary, have accused the EEOC of violating its own rules for the plaintiffs' benefit. The EEOC's submission of affidavits refuting this accusation was a natural response. It does not, by itself, affect the EEOC's ability to invoke the privilege. Defendants have offered no case law in support of their one paragraph argument.

Had the EEOC revealed some part of its deliberative process in the Bailey and Sienko affidavits, then this could have been viewed as a potential waiver of the privilege. But the affidavits are conclusory, so much so that the defendants complain about them in their memorandum opposing acceptance of the Bailey affidavit, Dkt. 34 at 2. Had it been otherwise, the EEOC might well have opened the door to a full disclosure of its deliberations in this case. Because no deliberative details are revealed, there has been no waiver. Defendants are not entitled to further discovery on this basis.

Finally, defendants claim that they have shown a particularized need for the requested information that overcomes the EEOC's claim of privilege. Not so. All defendants have shown is a desire for the material. They certainly don't need it. Applying the five part test of *K.L. v. Edgar,* 964 F.Supp. 1206, 1208 (N.D.Ill.1997), I find that: 1) the

evidence sought is not directly relevant to this litigation. It is only relevant as impeachment evidence on a procedural summary judgment motion. 2) There is no other source of impeachment on this issue besides deposing the EEOC's witnesses and perusing the EEOC's files. 3) The EEOC has no role in this lawsuit. It issued its letters then closed the case. 4) The underlying lawsuit is serious, the defendants' pending motion for summary judgment is not. It is a collateral matter that is currently on life support. 5) Based on Chairwoman Castro's affidavit, disclosure of the information sought would chill future EEOC deliberations.

In sum, the EEOC's claim of privilege is well taken and this court will enforce it.

### Cost Shifting

In its motion the EEOC asks for reimbursement of its costs in bringing this motion. Defendants briefly respond that this request is "excessive." Dkt. 41 at 10. Fee-shifting under Rule 37(a) is not a sanction for advocating a frivolous position; rather, its rationale is that the victor should be made whole simply for having prevailed on the motion. *Rickels v. City of South Bend, Indiana,* 33 F.3d 785, 787 (7th Cir.1994). Put more bluntly, "the great operative principle of Rule 37(a)(4) is that the loser pays." *Id.,* quoting Wright & Miller, 8 Fed. Practice and Procedure, § 2288 at 787 (1970). Unless defendants can establish that their position in seeking this discovery from the EEOC was substantially justified, the EEOC is entitled to reimbursement of all reasonable expenses incurred in moving to quash. *Id.* at 787.

Here, the EEOC won on all fronts. The only question was whether defendants' attempt to obtain the EEOC's documents and to depose the EEOC's employees was substantially justified. I find that it was not. At the beginning of this order I acknowledged that the facts proffered by defendants regarding the EEOC's reconsideration of plaintiffs' claims were sufficiently intriguing to merit a long-shot bet on summary judgment if defendants were inclined to take the gamble. But the Sienko and Bailey affidavits changed everything. Once the EEOC dealt plaintiffs a pair of aces, defendants should have folded. Instead, defendants played on, and added a demand that the EEOC show

them the deck so they could see whether the EEOC dealt plaintiffs a card or two off the bottom. If the defendants want to play out the hand against plaintiffs, that's their prerogative, but they had no substantial justification for going after the EEOC. The EEOC affidavits speak for themselves and defendants' subsequent subpoenas to the EEOC were a pointless overreaction. Therefore, the EEOC is entitled to reimbursement of its costs.

The EEOC may have until December 1, 1998 within which to file and serve its itemized bill expenses incurred in filing and advocating its motion. Defendants may have until December 7, 1998 to respond solely to the reasonableness of the EEOC's claimed expenses.

It is ORDERED that:
1. Plaintiffs' motion to supplement the record is GRANTED;
2. The EEOC's motion to quash subpoenas is GRANTED; and
3. The EEOC's motion for reimbursement under Rule 37(a)(4)(A) is GRANTED.