**Edwin BOSAW, Plaintiff,**

v.

**NATIONAL TREASURY EMPLOYEES' UNION, Valerie C. Stewart, and Robert M. Tobias, Defendants.**

**No. IP 94–0726–C–M/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 24, 1995.

---

Robert C. Perry, Indianapolis, IN, for plaintiff.

Jan M. Carroll, Barnes & Thornburg, Indianapolis, IN, for Nat. Treasury Employees' Union.

Michael K. Sutherlin, Indianapolis, IN, for Valerie Stewart.

Gerald A. Coraz, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, IN, for William Jacobs and Mary Graham, Interested Parties.

## ORDER

McKINNEY, District Judge.

This dispute comes before the Court in an unusual posture. In a state court action for defamation and malicious prosecution brought by Edwin Bosaw ("Bosaw"), defendant Valerie Stewart ("Stewart") sought third-party discovery from certain officers of the Internal Revenue Service (the "IRS Officers"), nonparties in that action.[1] The IRS Officers refused to produce the requested records and petitioned to remove the entire case to this Court after the state trial court issued an order compelling production of the records in the IRS's possession. They now seek an order from this Court vacating the state court's order, and denying Stewart's motion to compel discovery. The Court has been fully briefed and the issues are now ripe for resolution. As further explained below, the motion to vacate the state court's order is **SUSTAINED,** but the Court declines to exercise jurisdiction over the motion to compel.

## I. FACTUAL & PROCEDURAL BACKGROUND

Stewart is an employee of the IRS at its regional office in Indianapolis, and the nonparties against whom she seeks discovery are the IRS's disclosure officers in possession of the records she seeks. The underlying action in the state trial court is cast as one against the National Treasury Employees' Union (NTEU), Stewart, a union steward, and Robert M. Tobias, the union's president. These three have been accused of defaming Bosaw and of falsely and maliciously prosecuting an action against him in federal district court for his alleged malicious prosecution of Stewart.

The story behind both lawsuits involves an accusation against Stewart by a coworker, Lisa Y. Gude ("Gude"). Gude accused Stewart of selling Bart Simpson dolls at work that she allegedly had stolen from her part-time employer, Burger King. The accusation triggered an investigation by Bosaw, who is an IRS inspector, which included interviews at Burger King. Once the restaurant was alerted to the possibility that one of its employees may have stolen Simpson family dolls and was selling them at the IRS, it involved the Indianapolis Police Department ("IPD") in the case. IPD conducted an investigation that culminated in the arrest of Stewart for theft. The criminal charges against her were eventually dropped, after which Stewart filed a malicious prosecution action against Bosaw and the IPD officer involved.[2]

---

1. The discovery requests were directed at William Jacobs, the IRS District Director in Indianapolis, and the IRS Disclosure Officer in Indianapolis (Mary Lou Graham). For purposes of this order the Court will refer to these officers collectively as the "IRS Officers".

2. That action was captioned *Stewart v. Bosaw*, Cause No. IP 91–792–C, which was filed with the

United States District Court for the Southern District of Indiana. On September 21, 1992, summary judgment was entered in favor of both defendants, Edwin Bosaw and Richard Wilbur. Many of the facts recited in this order were drawn from the Findings of Fact in Judge Barker's summary judgment order.

The District Court in the *Stewart* case ruled against Stewart by granting both defendants' motions for summary judgment. Subsequently, Bosaw filed his action for defamation and malicious prosecution in the Marion Superior Court. Part of Stewart's defense to that action is that she had grounds for her malicious prosecution suit because the entire "doll" incident occurred in retaliation for the grievances she had filed as a union steward against various IRS inspectors and other employees, including Gude. Coincidentally, the inspectors involved in the investigation of Stewart were the ones against whom she had filed grievances. Stewart claims that she needs the requested personnel records to demonstrate the basis for her belief that she was maliciously prosecuted by Bosaw.

Stewart claims she is seeking records that document the grievances filed against these individuals during her tenure as union steward.[3] In an effort to obtain the records, she filed a Freedom of Information Act ("FOIA") request, accompanied by a subpoena *duces tecum* and a request for production of documents pursuant to Indiana Rules of Civ.P. 34(C) and 45(B). The IRS Officers refused to provide the documents on the grounds that they contained information, the disclosure of which would constitute an unwarranted invasion of the personal privacy of the IRS employees, some of whom were not even parties to the action.[4] That refusal led Stewart to file a motion to compel discovery against the IRS Officers. The day after that filing, the Marion Superior Court issued its order compelling production of the records. Rather than move to quash the subpoena, or seek a protective order or reconsideration of the state court's order, the IRS Officers removed the action to this Court for resolution of the discovery dispute.

The resolution they seek is for this Court to vacate the state court's order compelling them to produce the records, as evidenced by the Officers' motion to vacate. The grounds asserted include their claim that the state court lacks jurisdiction to compel subordinate officers of the United States to produce records, in an action in which the United States is not a party, when such production violates regulations promulgated by the agency. In addition, although the state court ordered the individual officers to produce the records, the IRS Officers claim that the order is really directed at the United States, which enjoys sovereign immunity from such actions unless it is a party to the suit. Finally, the IRS Officers ask this Court to overrule Stewart's motion to compel on the grounds that the information she seeks is irrelevant and its disclosure would constitute an unwarranted invasion of privacy of the persons whose records are sought. For these reasons, ac-

---

3. According to Stewart's motion to compel third-party discovery in the state court, she specifically seeks the documents that "address the complaints that Defendant Stewart, a union steward, lodged against" those employees who were angry with her and manufactured and initiated the criminal case against her. Def. Stewart's Mot. to Compel Discovery Third Party Production, ¶¶ 28–29. In her January 29, 1994 FOIA request, Stewart asked for the following:

1. All documents, notices, standing orders and policy manuals which prescribe and define the authority and responsibilities of inspectors for the Treasury Department, Internal Revenue Service.
2. Any personnel notes, phone logs, activity logs, and rough drafts of interviews that were created or obtained in the course of the investigation focusing on Valerie Stewart and her alleged theft of dolls from the Burger King Restaurant occurring in 1990.
3. All mileage tickets or documents which will demonstrate out of office trips conducted in connection with the investigation of the complaint against Valerie Stewart that she had allegedly stolen dolls from the Burger King by any and all IRS and other investigators including Edwin Bosaw.
4. The entire investigative file concerning the complaint against Debbie Mosier for unauthorized absence from her office on a frequent basis. This accusation was brought to the attention of plaintiff Bosaw by George Bilque and Valerie Stewart.
5. All of the grievances or complaints filed by employees of the Treasury Department, Internal Revenue Service under the supervision of Ms. Gude from 1986 until the present.

4. The Court notes, however, that the IRS had previously provided items responsive to requests for production numbers 2 and 3, which pertain to the investigation of Stewart, on or about June 21, 1991 (presumably in connection with her lawsuit against Bosaw for malicious prosecution). Consequently, it will consider those items not to be a part of the current discovery dispute.

cording to the IRS Officers, the state court's order should be vacated and the motion to compel denied.

Stewart, on the other hand, argues that the plain language of 5 U.S.C. § 301,[5] the Federal "housekeeping statute" under which the IRS claims its authority to control the information its officers may release, specifically prohibits the withholding of information from the public. In addition, the regulations promulgated by the Secretary of the Treasury, Stewart notes, allude to the possibility that a court may request or demand that such information be released. She also argues that unless she has access to this information she will be prevented from preparing an adequate defense, and she suggests the means by which such disclosure could be accomplished while protecting the privacy interests involved. Finally, she argues that because the United States is not a party to the action, and thus not subject to the imposition of liability, the doctrine of sovereign immunity is not implicated.

## II. DISCUSSION

Before deciding the motion to vacate the state court's order this Court must address some preliminary issues. First among them is the question of the basis for the Court's jurisdiction when the dispute is between a state court defendant and two nonparty federal officers who are in possession of or have control over certain records belonging to the IRS. Next, if jurisdiction is established, the Court must determine what relief can be given within the scope of that jurisdiction. This inquiry requires an investigation of whether a federal district court may, and whether it should, vacate an order of a state trial court. A corollary to that inquiry is whether, if the state court order is vacated, this Court can issue a discovery order of its own. Only after these preliminary matters are resolved may this Court consider the merits of the pending motion and whether to decide Stewart's motion to compel as the IRS Officers have requested.

### A. Jurisdiction

■ The IRS Officers invoke federal jurisdiction based on the right of federal officers to remove any civil or criminal action against them in a state court to a federal forum.[6] 28 U.S.C. § 1442. That right is "absolute for conduct performed under color of federal office." *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 1664–65, 68 L.Ed.2d

---

5. Found in the chapter of the United States Code on "Powers" granted to the agencies of the Executive department of the federal government, § 301 applies to the regulations agencies may promulgate to govern the conduct of their employees. Section 301 provides:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, *and the custody, use, and preservation of its records, papers and property.* This section *does not authorize withholding information from the public* or limiting the availability of records to the public.

5 U.S.C. § 301 (emphasis added).

6. The Federal Officer Removal Statute provides in pertinent part:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to [a] district court of the United States ...:
>> (1) any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

28 U.S.C. § 1442(a)(1). The Court notes that in their Petition for Removal, the IRS Officers in-

voked jurisdiction pursuant to 28 U.S.C. §§ 1441–1446, without clearly designating the precise statute under which removal was sought and the factual basis for that removal jurisdiction. Petition for Removal ¶ 1. Further, the IRS Officers seem to be invoking federal question jurisdiction under 28 U.S.C. § 1441(b). *Id.* ¶¶ 2–3.

Despite the possible implication of 5 U.S.C. § 301, 5 U.S.C. § 552a, 31 C.F.R. § 1.1–1.26 and 26 C.F.R. § 301.9000–1 in the defenses offered by the IRS Officers to justify their refusal to comply with the state court's order, a federal question does not arise on the face of Bosaw's complaint. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Illinois v. Kerr–McGee Chemical Corp.*, 677 F.2d 571 (7th Cir.), *cert. denied*, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (stating that removal is not allowed on basis of a federal defense even if parties agree that it is the only issue to be resolved). Consequently, no federal jurisdiction exists on this basis. The only possible basis for removal in this case is the above-quoted Federal Officer Removal Statute.

58 (1981). Consequently, the Supreme Court has "insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.* (quoting *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969)).

■ The purpose served by § 1442 is to provide a federal forum for the litigation of claims against federal officials in which they must raise defenses arising from their official duties. *Willingham,* 395 U.S. at 405, 89 S.Ct. at 1815. Because the Federal government

> can act only through its officers and agents, and they must act within the States ... [i]f ... those officers can be arrested and brought to trial in a State court ... and if the general government is powerless to interfere at once for their protection ... the operations of the general government may at any time be arrested at the will of one of its members.

*Id.* at 406, 89 S.Ct. at 1815–16; *see also Manypenny,* 451 U.S. at 242, n. 16, 101 S.Ct. at 1664, n. 16.

■ After providing this rationale for the absolute right of removal, the Supreme Court explained the meaning of acting "under color" of federal office. Choosing a broad interpretation of that requirement, the Court said it would be sufficient if the federal officers demonstrate that their relationship with the plaintiff "derived solely from their official duties" and that they were on duty, at their place of federal employment, at all relevant times. *Id.* at 409, 89 S.Ct. at 1817. Therefore, for federal officers to invoke removal jurisdiction under § 1442 they must show that an action has been commenced against them in a state court, which is based on an act the federal officer performed while on duty at the officer's place of federal employment. They must also show that they have a bona fide federal defense to the state law claim. *See Venezia v. Robinson,* 16 F.3d 209, 211 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994), (stating that the section "does not permit removal on the federal party's say-so," citing *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)).

■ Without dispute, the IRS Officers' actions in this case occurred while they were on duty at their place of employment, which is a sufficient showing for the "under color of federal office" requirement. Also, they have refused to release the documents because doing so might violate federal regulations, which is a defense based on federal law. At issue, however, in light of the fact that the federal officers are not named parties in the state court action, is whether the state court's order compelling discovery constitutes an "action" for purposes of § 1442.

In keeping with the Supreme Court's admonition not to frustrate this statute by a "narrow, grudging interpretation," courts have extended the meaning of "action" to include the removal of contempt proceedings arising from discovery disputes between a party to a state court action and a nonparty federal officer or agency. *See Edwards v. United States Dept. of Justice,* 43 F.3d 312 (7th Cir.1994); *Louisiana v. Sparks,* 978 F.2d 226, 232 (5th Cir.1992) (allowing removal of dispute before contempt proceedings commenced, but limiting its holding because Louisiana law provides for no meaningful delay between witness's refusal to comply with a subpoena and state court's right to hold witness in contempt); *Florida v. Cohen,* 887 F.2d 1451, 1453–54 (11th Cir.1989) (noting that § 1442 is an "incident of federal supremacy and is designed to provide federal officers with a federal forum in which to raise defenses arising from their official duties"); *Boron Oil Co. v. Downie,* 873 F.2d 67, 69 (4th Cir.1989); *Nationwide Investors v. Miller,* 793 F.2d 1044, 1047 (9th Cir.1986) (holding removal proper even when federal officer not yet subjected to contempt proceedings); *Swett v. Schenk,* 792 F.2d 1447, 1450 (9th Cir.1986) (noting removal was proper after state court found federal officers in contempt and sentenced them to jail); *Wisconsin v. Hamdia,* 765 F.2d 612, 614–15 (7th Cir.1985) (holding removal of contempt proceeding proper, but limiting federal court jurisdiction just to those proceedings, and not to determining relevance of documents sought); *Wisconsin v. Schaffer,* 565 F.2d 961, 963 (7th Cir.1977) (finding contempt proceeding against Assistant United States Attorney for

refusal to produce record of federal grand jury proceedings in state court criminal prosecution was a civil action for purposes of § 1442 and removable); *Carr v. North Carolina,* 386 F.2d 129, 131 (4th Cir.1967) (holding removal proper whenever federal officer is being forced to answer in a state court for conduct assertedly within the officer's duties); *Ferrell v. Yarberry,* 848 F.Supp. 121, 122 (E.D.Ark.1994) (holding that removal was proper even though federal officers had not been cited for contempt because a subpoena is an action against a federal officer); *California v. Reyes,* 816 F.Supp. 619, 622 (1992) (same); *Reynolds Metals v. Crowther,* 572 F.Supp. 288, 289 (D.Mass.1982) (holding removal of contempt proceedings proper).

The Seventh Circuit, however, has yet to address the precise issue of whether a federal officer can remove a discovery dispute that has not yet reached the stage of a contempt proceeding. In *Schaffer,* the issue on appeal was whether a state court's order to show cause commenced a removable civil or criminal action within the meaning of § 1442. The Seventh Circuit resolved the matter by looking to Wisconsin statutes in which an order to show cause was designated as the court's service of process for a contempt proceeding. *Schaffer,* 565 F.2d at 963. For that reason the court found that the order to show cause "sufficiently commenced" a proceeding against the federal officer. *Id.*

The *Schaffer* court also noted that the language "civil action or criminal prosecution" in § 1442 should be construed broadly to achieve the purpose of the statute. *Id.* That purpose is to make sure that a "federal officer or agent [will] not be forced to answer for conduct assertedly within his duties in any but a federal forum." *Schaffer,* 565 F.2d at 963 (citing *North Carolina v. Carr,* 386 F.2d 129, 131 (4th Cir.1967), with approval). In *Carr,* the Fourth Circuit stated that the "central and grave concern" of § 1442 "is to take from the state courts the indefeasible power to hold an officer or agent of the United States criminally or civilly liable for an act allegedly performed in the execution of any of the powers or responsibilities of the Federal sovereign." *Carr,* 386 F.2d at 131. The *Carr* court also advised looking to the

substance rather than the form of the state court proceeding.

In the absence of Seventh Circuit precedent on this precise issue, this Court must look to persuasive authority in other jurisdictions. In 1986, the Ninth Circuit addressed the specific issue of whether § 1442 removal was proper when the state court had not commenced contempt proceedings. *See Nationwide Investors v. Miller,* 793 F.2d 1044 (9th Cir.1986). Reasoning that a federal officer who is ordered to do something, and refuses, risks the initiation of contempt proceedings, the *Miller* court noted that "nothing more is at stake" when contempt proceedings have begun than was at stake at the time of the initial order. *Id.* at 1046. Without question, the court observed, the government will have the power to remove simply by waiting to be sued or prosecuted for contempt. To impose a ban on removal at the initial stage "is worse than an empty gesture, because it encourages the government to disobey state court process so that the government can obtain a federal forum." *Id.*

The *Miller* court announced that it would follow those circuits who read § 1442 broadly, because part of the purpose of that statute is to "prevent state courts from unlimited exercise of their subpoena power against federal officers upon pain of contempt." *Id.* at 1047. Consequently, according to the Ninth Circuit, a federal officer can remove even if not a party to the action and even if not being held in contempt, as long as the officer is "threatened with the state's coercive power." *Id.* at 1046. Although the Seventh Circuit has not cited the *Miller* decision, courts in the District of Columbia, Fourth, Fifth, Eighth, Tenth and Eleventh Circuits have cited with approval its reasoning and result. This Court finds that to be ample endorsement of its rectitude.

In the case at hand, Stewart sent a Request for Third Party Production, a FOIA Request, and a subpoena *duces tecum* to the IRS Officers, in an effort to obtain various personnel records. She received a complete denial of her request from one of the officers,

citing a FOIA exemption.[7] She then filed a Motion to Compel Discovery Third Party Production with the state court, which promptly ordered the IRS Officers to produce the records. The IRS Officers have not complied with that order, but instead petitioned to remove the entire case to this Court.[8]

The Officers' refusal to obey the Marion Superior Court's order could result in a contempt proceeding against them.[9] Consequently, the Officers have been sufficiently threatened with the state's coercive power to make removal appear proper. For this Court to encourage or require federal officers to disobey a state court order before they can remove the dispute to federal court is not only overly formalistic, it is simply bad policy. Although the *Schaffer* court narrowed its holding by relying on the Wisconsin statutes' characterization of an order to show cause, its rationale provides encouragement, in light of the *Miller* decision, to allow the removal of this discovery dispute. Therefore, the Court finds that the discovery dispute between Stewart and the IRS Officers was properly removed.

In most circumstances, however, only the discovery dispute, or contempt proceeding, should be removed to federal court. *See Hamdia,* 765 F.2d at 613 (stating that only the issues relating to the contempt proceeding were properly removed); *Schaffer,* 565 F.2d at 964; *Florida v. Cohen,* 887 F.2d 1451, 1454, n. 5 (11th Cir.1989). In this case, the IRS Officers erroneously removed the entire case, presumably expecting this Court to exercise supplemental jurisdiction. However, if the underlying state court action is not otherwise subject to federal jurisdiction and is not so intertwined with the federal dispute as to be impractical to bifurcate, it should remain in the state court.

## B. Available Relief

### 1. Scope of Jurisdiction

The Seventh Circuit addressed the issue of the scope of a district court's jurisdiction upon removal from state court of a collateral proceeding against nonparty federal officers in *Hamdia,* 765 F.2d at 613. The *Hamdia* opinion emphasized that the only issues removable from the state court's jurisdiction were those involved in the contempt proceeding and the government's corresponding claim of a national security privilege. *Id.* Consequently, when the district court was confronted by the United States's proposal of summarizing the FBI documents sought in the state court discovery dispute, it referred the summarized documents to the state trial court for a determination of whether they complied with the state court's order of production.

Upon receipt of the materials, the state court reversed its own prior decision that denied the United States's motion to quash

---

7. *See* 5 U.S.C. § 552(b)(6). Section 552, codifying the Freedom of Information Act, provides that each federal agency must make certain information available to the general public, and must promulgate regulations regarding the procedures to follow to obtain the information, in addition, the section provides for a mechanism by which a member of the public may seek the assistance of a federal district court in obtaining any agency records that have been improperly withheld. *See* 5 U.S.C. § 552(a)(4)(B). The district court is to consider the matter *de novo,* may assess attorneys fees and costs against the government, and may even hold the individual officer who refuses to comply with a court order in contempt. *See* 5 U.S.C. § 552(a)(4)(B), (4)(E), and (4)(G).

Subsection (b) identifies the type of information or records that are exempt from the above-described provisions. This includes:
(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
5 U.S.C. § 552(b)(6).

8. Their refusal was based on their claim that compliance might violate the privacy rights of those persons whose records are sought, in violation of the Privacy Act, 5 U.S.C. § 552a.

9. The federal officers' defense to such a proceeding is premised on *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), which held that subordinate federal officials may refuse to produce evidence in response to a subpoena *duces tecum,* when federal regulations forbid their release without prior approval by the head of the department. *Id.* at 468, 71 S.Ct. at 419. Because this is a colorable defense arising out of their duty to enforce federal law, the officers can be said to have been acting under color of their office for purposes of § 1442 and to have a bona fide federal defense.

the subpoena *duces tecum*. Finding no relevant, material or competent evidence among the summarized materials, the court then granted the government's motion to quash. As a result, the federal district court found the issues in the contempt proceeding to be moot and dismissed it.

On appeal, Hamdia argued that the district court had exclusive jurisdiction over the entire action and had therefore acted improperly by requesting the state court to review the summarized documents. He also asserted that the state court had no jurisdiction to quash a subpoena after the removal to federal court. The Seventh Circuit agreed with the district court's analysis and upheld its dismissal.

This case demonstrates the limited jurisdiction a federal court acquires over a collateral proceeding between a party to state court litigation and a nonparty federal officer. Because the contempt proceeding, or in this case the order compelling discovery, is the action against a federal officer, it follows that only that portion of the state court case is removable under § 1442.

### 2. *Derivative Jurisdiction*

◼ When an action against federal officers is removed pursuant to § 1442, the federal district court acquires no independent jurisdiction on removal. Rather, its jurisdiction is derivative of that of the state court. *Arizona v. Manypenny*, 451 U.S. 232, 242, n. 17, 101 S.Ct. 1657, 1665, n. 17, 68 L.Ed.2d 58 (1981) (referring to "the area of general civil removals" the Court noted the "well-settled" rule that if the state court lacks jurisdiction, the federal court acquires none upon removal; the Court then declared that principle to be "instructive" in the § 1442 removal context); *Edwards*, 43 F.3d at 315 (repeating same); *Boron Oil*, 873 F.2d at 70. The federal court's jurisdiction is derivative even if the court would have had jurisdiction had the action been brought there initially. *Manypenny*, 451 U.S. at 242, n. 17, 101 S.Ct. at 1665, n. 17. As indicated in a 1994 Seventh Circuit case, this rule of law appears to have

survived Congress's amendment of the removal statute via the Judicial Improvements Act of 1985, which expanded general civil removal jurisdiction. *Edwards*, 43 F.3d at 315; *See* 28 U.S.C. § 1441(e) (specifically stating that removal jurisdiction under § 1441 is *not* derivative of the state court's jurisdiction).

According to the legislative history of this amendment, Congress's purpose in changing the removal statute was to correct the "caselaw gloss" to § 1441 that barred removal to federal court of an action over which the state court did not have jurisdiction because of the exclusive jurisdiction of the federal courts. *See* H.R. 3570, 99th Cong., 2nd Sess., sec. 3, at 13, *reprinted in* 1986 U.S.C.C.A.N. 1540, 1553. It would seem that a similar concern arises from the caselaw gloss relating to § 1442, and that federal courts should likewise not be restricted by the doctrine of derivative jurisdiction when removal occurs pursuant to this section. However, Congress did not similarly amend § 1442, whether by oversight or intentionally is not clear, and courts seem disinclined to harmonize these two removal statutes. Such harmonizing makes sense, it seems, since the notion of derivative jurisdiction was first imported into § 1442 via footnote 17 in *Manypenny*, in which the Supreme Court relied on the caselaw gloss that had applied derivative jurisdiction to general § 1441 removal.

This Court, however, is restrained by binding precedent, and the most recent Seventh Circuit precedent indicates that the Court's jurisdiction is restricted to whatever jurisdiction the state court had over this discovery dispute.[10] The parties disagree, however, about the extent of state court jurisdiction to order the federal officers to produce the records.

The IRS Officers maintain that state court jurisdiction is barred, in an action to which the United States is not a party, by the doctrine of sovereign immunity and by the Supremacy Clause. Specifically, the IRS Officers state that "the United States of Amer-

---

**10.** Apparently, no issues relating to the jurisdiction of the state court, and correspondingly that of the federal court were at issue in *Hamdia*, where both the district court and court of appeals treated the case as if the state court had jurisdiction to hold a federal officer in contempt. *See Hamdia*, 765 F.2d at 615.

ica, its officers and its agencies may not be compelled to produce documents to litigants in actions to which it is not a party." Brf. in Supp. of Mot. to Vac.St.Ct.Ord. Compelling Non–Party Disc. at 4. Upon close reading of *Touhy,* on which the IRS Officers rely, it appears that the Supreme Court did not intend such a broad sweep of protection to federal agencies. *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In fact, the *Touhy* court specifically noted that the extent of the department head's authority to withhold documents from the court was not at issue in that case. *Id.* at 467, 71 S.Ct. at 419; *cf. Exxon Shipping Co. v. United States Dept. of Interior,* 34 F.3d 774, 777–78 (9th Cir.1994) (specifically holding that 5 U.S.C. § 301 does not authorize agency heads to withhold documents or testimony from federal courts in response to a federal subpoena). The IRS Officers' statement, therefore, is not as well settled as they maintain, unless it is restricted to state courts.

Stewart, on the other hand, contends that the state court had all the jurisdiction necessary to resolve a discovery dispute between herself and the third parties, even if they were federal officers. She claims that sovereign immunity is not implicated because the United States is not a party to the action and is not subject to liability. Noting that the IRS Officers removed the entire action and not just a collateral proceeding to this Court, Stewart attempts to distinguish the *Boron* holding that unless the agency waives its sovereign immunity, a state court, and the federal court upon removal, "lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction." *Boron,* 873 F.2d at 70.

### 3. Sovereign Immunity

Sovereign immunity inheres whenever an action or proceeding against the United States would result in a judgment that would "expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." *Id.* (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)). Sov-

ereign immunity prohibits suits against the United States unless it has explicitly consented to be sued. *Price v. United States,* 42 F.3d 1068, 1071 (7th Cir.1994). Moreover, the terms of the consent to be sued define the court's jurisdiction. *Id.* (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). "Because sovereign immunity is jurisdictional in nature, the government's waiver of sovereign immunity is a jurisdictional prerequisite to [a court's] order." *Id.; see also Edwards,* 43 F.3d at 317 (stating that a waiver of sovereign immunity cannot be implied, but must be "unequivocally expressed"). The *Edwards* court noted that in "cases involving § 1442 removals of state subpoena proceedings against unwilling federal officers … sovereign immunity bars the enforcement of the subpoena." *Edwards,* 43 F.3d at 317.

To avoid sovereign immunity, a person seeking to sue a federal officer or agency must show either that the claim is covered by a specific statutory authorization to such suit, or that it is not an action against the United States. 14 Wright & Miller, **Federal Practice and Procedure** § 3655. The issue in this case seems to be whether the proceeding qualifies as an action against the United States. It is fundamental that the United States can only act through its agents. *Willingham,* 395 U.S. at 406, 89 S.Ct. at 1815–16; *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1948). As long as the IRS Officers are acting within the scope of their employment an action against them is an action against the United States. *See Boron,* 873 F.2d at 69; *Reynolds Metals Company v. Crowther,* 572 F.Supp. 288, 290 (D.Mass.1982). There has been no dispute between the parties about whether the IRS Officers were acting within the scope of their employment. Undoubtedly they were. Rather the dispute is whether the order compelling production is an action.

Stewart focuses on the wrong activity when she concludes there is no action against the United States. She looks only to the named parties in the underlying state court action. However, this Court has already determined that the order compelling

production is an action against federal officers for § 1442 removal purposes, and it would fly in the face of logic to now hold for sovereign immunity purposes that it was not an action. Moreover, it is an action nominally directed to the officers, but the relief it seeks is against the sovereign. *See Larson,* 337 U.S. at 687, 69 S.Ct. at 1460. Because the sovereign acts only through its agents, when its agent's actions are restrained or compelled, the sovereign itself may also be restrained or compelled. *Id.* One of the purposes of sovereign immunity is to protect the government from a judgment that would have the effect of restraining it from acting, or compelling it to act. The state court order compelling production of the personnel records, when the officers have refused to produce them pursuant to valid agency regulations, would seem to fall within that purpose. Consequently, this Court finds that sovereign immunity was implicated in the state court proceeding.

▆▆▆▆ The United States can waive its sovereign immunity, which removes the bar to proceeding against a federal officer or agency. However, the waiver must be explicit. *Edwards,* 43 F.3d at 317. The terms of any such waiver usually include conditions regarding how to bring the action, when it can be brought and in what courts the United States has consented to be sued. At issue here is a state court's order to federal officers to comply with a discovery request that was accompanied by a subpoena *duces tecum.* No federal statute waiving sovereign

immunity has been invoked by the party seeking the discovery. Rather, the state court's action was based on Indiana Rule Civ.P. 37(a). Nor did the government explicitly waive its sovereign immunity.[11] Consequently, this Court finds that the state court lacked jurisdiction to order the federal officers to produce the personnel records. Because this Court's jurisdiction is derivative of the state court's, it likewise is barred from ordering the IRS Officers to produce documents against the valid instructions of their department head.

### 4. The Touhy Doctrine

▆▆▆▆ By their motion to vacate, the IRS Officers have also brought Stewart's motion to compel discovery before this Court. Just as the state court lacked jurisdiction to compel the federal officers to act against their will, so this Court lacks jurisdiction to do so. Having said that, the Court would note that even if the action had originated in a federal court, the *Touhy* doctrine would prohibit such an order. Under *Touhy,* the subordinate federal officers in this case are protected from court process aimed at directing them to take action that is contrary to instructions from their superiors.

The precise holding of *Touhy* is that a subordinate federal officer cannot be held in contempt for refusing to produce information in response to a court order, when such production would violate specific instructions from the department head, who was acting pursuant to valid regulations.[12] *Touhy,* 340

---

**11.** Nor has federal court jurisdiction been obtained over the agency so that its act of refusing to produce the records could be reviewed. ·

**12.** The purported rationale for this holding is that because of the "variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court" it is necessary to centralize the determinations about whether to obey or challenge subpoenas *duces tecum. Touhy,* 340 U.S. at 468, 71 S.Ct. at 419. In response to the argument that such a holding would result in the head of an executive department becoming the "determinator" of what will be admitted into evidence in litigation, the Court wrote that the constitutionality of the department head's decision about how to respond to the subpoena was not before the Court. Noting that the Attorney General was not served with the subpoena, the

Court said that it was unnecessary to "consider the ultimate reach of the Attorney General to refuse to produce at a court's order the government papers" sought. *Id.* at 467, 71 S.Ct. at 419.

In his concurrence, Justice Frankfurter took pains to report to all that the precise holding of the Court "cannot afford a basis for a future suggestion that the Attorney General can forbid every subordinate ... from producing relevant documents and later contest a requirement on him to produce on the ground that procedurally he cannot be reached." *Id.* at 472, 71 S.Ct. at 421. Justice Frankfurter then announced that the Attorney General can be reached by process, but that the "disclosures he may be compelled to make is another matter." *Id.* at 473, 71 S.Ct. at 422. The Attorney General may invoke evidentiary privileges, but not governmental immunity, according to the concurrence. Justice Frankfurter concluded by observing:

U.S. at 468, 71 S.Ct. at 419. The instructions here come from Department of Treasury regulations that specifically prohibit someone in Jacobs' and Graham's shoes from producing records in response to a subpoena without the approval of the department head. That approval, apparently, was not forthcoming in this case. Consequently, because the department head's instructions are not being challenged, (i.e. the IRS itself is not named in the subpoena, and no direct action has been brought against the agency), the *Touhy* doctrine would bar this Court from issuing an order requiring the production of the personnel records.

To clarify this area for future reference, this Court examined many cases dealing with § 1442 removal and with the *Touhy* doctrine. What has emerged is a mosaic of decisions, but the pattern revealed seems to reflect federalism concerns when the case originates in state court, and separation of power concerns when the case originates in federal court.[13] In state court initiated cases, some of the decisions were based only on the *Touhy* doctrine (which itself is a reflection of federalism). *See Swett*, 792 F.2d at 1451; *Hamdia*, 765 F.2d at 613; *Ferrell*, 848 F.Supp. at 122; *Reyes*, 816 F.Supp. at 622.

Many of the cases, however, also cited problems with jurisdiction. *See Edwards*, 43 F.3d at 317; *Sparks*, 978 F.2d at 234–35; *Boron*, 873 F.2d at 69; *Miller*, 793 F.2d at 1048; *Swett*, 792 F.2d at 1451; *Reynolds*, 572 F.Supp. at 290. A couple of cases proceeded to decide the merits (or attempted to) of the discovery dispute without mentioning a concern for jurisdiction. *See Hamdia*, 765 F.2d at 615 (undertaking to decide the merits, but on a limited basis, refusing to make relevancy determinations); *Schaffer*, 565 F.2d at 963 (affirming district court's vacating of subpoena because criminal defendant made insufficient showing of need to allow him to get secret grand jury minutes); *Reyes*, 816 F.Supp. at 622 (offering three bases for its decision to quash a subpoena, including that

the defendant failed to follow the procedures in the regulations, and that the material was not relevant and could be obtained elsewhere).

In one case, the federal court determined that the federal officer's refusal to produce documents constituted the invoking of a privilege, which the court proceeded to evaluate without concerning itself about jurisdiction. *See Florida v. Cohen*, 887 F.2d 1451 (11th Cir.1989). Another case noted the existence of a jurisdictional problem immediately, but then agreed with the parties to recast the contempt proceedings as an Administrative Procedures Act ("APA") claim, over which the federal court had jurisdiction. *See Edwards*, 43 F.3d at 316.

Reluctance to allow a state court to order federal officers to act, when such action would violate instruction from their department heads, stems from a blend of sovereign immunity, Supremacy Clause, and federalism concerns. *Exxon*, 34 F.3d at 778. Those concerns led to the Supreme Court's decision in *Touhy* and apply with equal force to federal courts after a § 1442 removal from the state court.

### 5. APA and Separation of Powers

■ When the case is originally brought in a federal court, a different set of concerns arise. If the government is a named party to the action, it is subject to the same rules of discovery as any private litigant. *Exxon*, 34 F.3d at 776, n. 4 (citing cases). When the government is not a named party, and a direct action is taken or has been filed against federal officers in an effort to get information or materials from them, courts sometimes deem the action to be a claim pursuant to the APA. *See* 5 U.S.C. § 702. The APA provides for the right of judicial review whenever a "person suffer[s] a legal wrong because of agency action" or is "adversely affected or aggrieved by agency action." *Id.* It further provides that the ac-

To hold now that the Attorney General is empowered to forbid his subordinates, though within the court's jurisdiction, to produce documents and to hold later that the Attorney General himself cannot in any event be procedurally reached would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle.

**13.** Those concerns served to either amplify or mute the sovereign immunity analysis, depending on where the case was originally brought.

tion, which must be brought in a federal court, cannot be dismissed on the grounds of federal sovereign immunity. Cases invoking the APA when evaluating the dispute between a federal officer and a litigant apply the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard. 5 U.S.C. § 706(2)(A); *See Moore v. Armour Pharmaceutical Co.*, 129 F.R.D. 551, 554 (N.D.Ga.1990), *aff'd*, 927 F.2d 1194 (11th Cir.1991); *Edwards*, 43 F.3d at 314 (although also grounding its decision on sovereign immunity, *see id.* at 317).

In addition to having the APA avenue open to them, federal litigants also have a separation of powers argument to call on in the event a federal officer refuses to produce documents that a federal court has ordered produced. *See Exxon*, 34 F.3d at 778 (noting "serious separation of powers questions" if executive agency could conclusively refuse to comply with federal subpoena); *Leyh v. Modicon, Inc.*, 881 F.Supp. 420, 423 (S.D.Ind. 1995). To allow an officer of the executive branch of the government to single-handedly control what information or materials will be in evidence in a case in federal court would seem to violate the Constitutional scheme of dispersing the federal power between Congress, the Executive, and the Judiciary. *See United States v. Reynolds*, 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953) (stating that judicial control over evidence cannot be handed over to "the caprice of executive officers"). Some cases, consequently, simply apply the discovery rules of the Federal Rules of Civil Procedure ("FRCP") and order information supplied if it is relevant, not privileged and available without serious inconvenience. *See Exxon*, 34 F.3d at 779; *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C.Cir. 1987); *Leyh*, 881 F.Supp. at 424.

The discovery rules provide federal courts with ample discretion to "prevent or restrict discovery that is obtainable from some other source that is more convenient, less burdensome, or less expensive, or where the burden or expense of the proposed discovery outweighs its likely benefit." *Leyh*, 881 F.Supp. at 424; Fed.R.Civ.P. 26(b)(2). In addition, the government may invoke common law privileges, such as the deliberative

process, investigative files, or state secrets privileges, which enable it to protect information from discovery. By moving to quash a subpoena, or for a protective order, the government would have ample opportunity to present to a court the reasons for its opinion that the discovery of certain matters is unwarranted. *See Laxalt*, 809 F.2d at 889–90.

### 6. Methods of Obtaining Federal Jurisdiction

One way that Stewart, and those like her, could obtain judicial review of an agency decision to withhold information or documents is to follow the appeal procedures promulgated by the agency in response to FOIA. In this case, those procedures were outlined for Stewart in a letter sent to her near the end of February, 1994. The IRS procedures involve sending a written appeal to the Commissioner of Internal Revenue (the "Commissioner") within a specified amount of time from the denial of the FOIA request. If the Commissioner denies the request or fails to reply within a certain time, the party may file a complaint with a federal district court. The IRS would have the burden of justifying its decision, and if it does not, the court may order the production of the information, as well as award attorney fees and other litigation costs to the party seeking the information.

Stewart made several errors in pursuing the information she needed to defend the state court case. First, she failed to exhaust her FOIA appeal process, which prevented her from getting a final agency decision from which to appeal. However, since a litigant is entitled to obtain through discovery more information than the general public is entitled to get through a FOIA request, Stewart should also have pursued a direct action against the IRS Officers and the agency itself, under the APA, which would allow judicial review of the agency's refusal to supply the information. She could have initiated such an action by obtaining a subpoena *duces tecum* for the records from a federal district court in a miscellaneous action naming the Officers and the agency. *See Exxon*, 34 F.3d at 776; *Sparks*, 978 F.2d at 235, nn. 15, 18 (noting that after dismissal on sovereign im-

munity grounds, defendant could still bring a direct action under APA or FOIA); *Swett,* 792 F.2d at 1452, n. 2 (noting that the proper way to challenge agency's decision to withhold testimony was a direct action pursuant to APA); *Leyh,* 881 F.Supp. at 423. Stewart took neither of these actions.[14]

Had Stewart first obtained federal jurisdiction over the dispute, this Court would have been in a position to determine whether the refusal to produce the records was reasonable, under FOIA, or arbitrary, capricious, an abuse of discretion or otherwise in violation of the law, under the APA. In so determining, the Court would have been mindful that the agency action was taken in response to a discovery request, which slightly alters that analysis. Although no issue of privilege has been raised, the concerns reflected by the Privacy Act would require the Court to determine the proper scope of this discovery. *See,* Fed.R.Civ.P. 26(b)(2) (allowing the court to limit the extent of discovery if it determines same to be duplicative, cumulative, obtainable elsewhere in a more convenient, less burdensome or expensive way, or if the burden or expense outweighs the benefit of the discovery); *Laxalt,* 809 F.2d at 889 (suggesting the use of protective orders or *in camera* inspections to protect the privacy of those whose records were sought); *Leyh,* 881 F.Supp. at 424.

### C. Discovery Dispute

#### 1. The Housekeeping Statute

In 1789, Congress passed a statute that allows departments of the Executive Branch to provide regulations for the efficient and uniform functioning of their agencies and employees, and for the proper handling of agency records and information. *See* 5 U.S.C. § 301; *see also Exxon,* 34 F.3d at 777 (reciting the act's history). This statute is commonly referred to as the "housekeeping statute" because it allows each administrative agency to keep its own house in a uniformly organized and efficient state. Pursuant to the housekeeping statute, the IRS promulgated certain regulations to implement the agency's requirements for the handling and disclosure of its own records. *See* 26 C.F.R. § 301.9000–1. The regulations also implement the requirements of the FOIA, 5 U.S.C. § 552, and provide guidance with respect to disclosure of agency information which might fall within the purview of the Privacy Act, 5 U.S.C. § 552a (hereinafter "Privacy Act"). *See* 31 C.F.R. § 1.1, 1.2, 1.20.

These regulations correspond to the three interests at stake in this discovery dispute. First, there is the interest of the federal agency in the efficient and organized management of its personnel and its records. Second, there is the interest of the public in information acquired and used by the agency that may involve matters of public or private concern. Third, there is the interest of each individual about whom the agency has a record of information, whether employees or patrons of the agency's services. Balancing those interests, when the documents are sought during the course of litigation, should be accomplished with the spirit of the discovery rules in mind. Those rules reflect the fundamental principle that "the public … has a right to every man's evidence." *Exxon,* 34 F.3d at 779 (quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)). Courts do not lightly make exceptions to this principle, nor are any exceptions "expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

Had Stewart brought an action in federal court directly against the IRS to obtain the

---

14. The IRS Officers are not without blame for failing to resolve this discovery dispute. The Court notes that resolution of this dispute could have been facilitated by the simple expedient of a stipulation between Stewart and the IRS Officers to recast the motion to compel and the subpoena as an APA complaint in this court, as the parties in *Edwards* did. That tactic was not unknown to the IRS Officers, because the *Edwards* case was separately filed as "Supplemental Authority" by them on March 6, 1995.

Although the act of re-characterizing the action once it arrives at federal court would seem blocked by the notion of derivative jurisdiction, this Court views that result as overly-formalistic, and would have entertained such a motion in light of the Seventh Circuit's implicit condoning of it in *Edwards.* By stipulating to the federal court that it agrees to reformulate the action as an APA claim, the IRS would sufficiently express by ratification the government's waiver of sovereign immunity embedded in 5 U.S.C. § 702.

records, after obtaining a final decision from the Commissioner, then the rules set forth in *Leyh, Laxalt,* and *Exxon* would control the resolution of this discovery dispute. Specifically, the doctrine of sovereign immunity would not authorize the Commissioner to refuse to comply with a subpoena from this Court compelling the production of the records to be used in a civil action not involving the IRS. *See Touhy,* 340 U.S. at 472, 71 S.Ct. at 421 (Frankfurter, J. concurring); *Exxon,* 34 F.3d at 778–79; *Leyh,* 881 F.Supp. at 423. Instead, this Court would be obliged to examine the interests at stake and attempt to balance them in a way that facilitates the search for truth, at the same time that it protects individual privacy interests and conserves the IRS's resources.

In doing so, the Court would have deemed as relevant the fact that Stewart was seeking the IRS's records of certain grievances filed against various inspectors, grievances in which she claims to have been involved as a union steward. The Court notes that those records might be more conveniently obtained through the union, which is a party to this litigation, or from Stewart's own personal files.

Beyond that, Stewart's expressed need for the records indicates a possible narrowing of the discovery to just the number of grievances filed, and the date and the general nature of the grievances lodged by Stewart against the IRS inspectors. Stewart, herself, noted in her brief filed in this action several methods by which the privacy interests of the persons whose records are sought could be protected. In this, as with any discovery dispute, the parties to the dispute should bear the responsibility of conferring together in an attempt to resolve the dispute. It has not come to this Court's attention that any such attempt was undertaken. However, assuming that the attempt had been made and the parties continued at loggerheads, this Court might proceed to analyze the dispute as follows.

The housekeeping statute, cited as authority for the regulations providing instructions to the IRS Officers, specifically prohibits a department head from withholding information or records from the public. *See Exxon,* 34 F.3d at 777 (noting that Congress amended § 301 in 1958 because of concern that the statute had become "twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public. . . .") Therefore, the authority for refusal by the IRS itself to produce the records would have to come from the Privacy Act. However, courts have held that when material is protected by the Privacy Act, that does not necessarily mean it cannot be produced pursuant to a discovery request during litigation. *Laxalt,* 809 F.2d at 888. Rather, it means that the materials must be protected in court as well. Another problem, then, with the state court's order compelling discovery, is that it did not provide adequate protection for the privacy interests of the parties whose records have been sought.[15]

### 2. The Privacy Act

When an agency's denial of a request for records within its possession is grounded on the fact that disclosure might constitute an unwarranted invasion of personal privacy in violation of the Privacy Act, the proper regulation to apply is the one implementing the Privacy Act. In this case the IRS Officers invoke the IRS's regulations implementing the housekeeping statute in an effort to demonstrate that the state court may not order them to disclose the requested records. *See* 26 C.F.R. § 301.9000–1. However, upon review of this regulation, it seems to be intended to apply to situations in which IRS officers or employees are asked to disclose information or records "with respect to the administration of the internal revenue laws or any other laws administered by or concerning the Internal Revenue Service." *Id.* at (b)(1). It is not clear that this regulation was meant to prevent disclosure pursuant to an order of a court of competent jurisdiction, which is specifically allowed by the Privacy Act. *See* 5 U.S.C. § 552a(b)(11); 31 C.F.R. § 1.20.

---

**15.** The most serious problem with the state court's order, however, is that it cannot be enforced against a federal officer.

Statutes limiting or prohibiting disclosures to the general public of information under the control of an agency do not necessarily limit or prohibit judicial discovery. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343–44 (D.C.Cir.1984); *see also, Culinary Foods, Inc. v. Raychem Corp.*, 150 F.R.D. 122, 125 (N.D.Ill.1993); *Cumis Ins. Soc., Inc. v. South–Coast Bank*, 610 F.Supp. 193, 197 (N.D.Ind.1985). Nor do those statutes create a qualified privilege, pursuant to which the party seeking discovery must demonstrate her need for the information before the court is required to order disclosure. *Laxalt*, 809 F.2d at 888. Statutes such as FOIA further the public's general right to know and ensure government accountability, while the Privacy Act protects the individual from the government's unwarranted disclosure of private information it has collected on that individual. Discovery, on the other hand, discourages unfair surprise and delay at trial, and facilitates truth seeking in the dispute resolution process. *Friedman*, 738 F.2d at 1344.

The decision of a trial court as to whether to order the production of documents pursuant to a discovery request is discretionary, and guided by the standard enunciated in Fed.R.Civ.P. 26(b)(1). *Laxalt*, 809 F.2d at 889. In *Laxalt*, the court was faced with a request not unlike the one at issue here. In an action for libel brought by Laxalt against defendant newspapers and their employees, the defendants sought certain documents from the Federal Bureau of Investigation ("FBI"), which they claimed contained the information on which they relied when they published two stories linking Laxalt with organized crime. *Id.* at 887. The documents were relevant to their defense, but they were also part of a law enforcement agency's investigative files and subject to Privacy Act protection. Consequently, the FBI's custodian of the records refused to release them without a court order authorizing disclosure under an exemption to the Privacy Act. *See* 5 U.S.C. 552a(b)(11).

The trial court had analyzed the dispute as if the Privacy Act added a higher standard for the showing a party must make when seeking discovery of documents that fall within that Act's purview. *Id.* at 887–88. Reversing the trial court, the D.C. Circuit Court of Appeals stated:

absent an express congressional intent to the contrary, the standards set forth in the FRCP must be followed with respect to discovery requests in District Court. We therefore hold that a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP.

The fact that a document is subject to the Privacy Act is not, however, irrelevant to the manner in which discovery should proceed. Although discovery standards ... permit access ... those same FRCP standards give the District Court ample discretion to fashion appropriate protective orders upon a showing of "good cause."

*Laxalt*, 809 F.2d at 889. The *Laxalt* court proceeded to suggest a balancing of the policies underlying statutory protection such as the Privacy Act and the factors supporting discovery in the particular lawsuit.

The fact that a document is protected by the Privacy Act is a relevant factor to consider when determining the scope and manner of discovery. However, courts are encouraged to make use of such traditional discovery devices as protective orders, *in camera* inspections, and limiting the use to which such information will be put. *Id.*

Although this decision has yet to be cited by any federal courts in the Seventh Circuit, it has been followed by courts in both the District of Columbia and Second Circuits. The *Laxalt* court wrote that unless Congress clearly stated its intention to require a higher standard of need before allowing discovery, the FRCP standard should be used. *Id.* This is especially true with respect to a statute in which, as in the Privacy Act, Congress expressly permitted court-ordered disclosure. *Id.*

The reasoning and result in *Laxalt* would be persuasive as applied to the facts at hand. The IRS has not claimed a

common law privilege as the basis for its refusal to produce the records at issue. Unless an official formally asserts privilege with respect to matters sought in discovery, and specifies which documents are privileged and for what reasons, no duty arises on the part of the person seeking discovery to demonstrate need for the disclosure. *Cumis Ins. Soc., Inc.*, 610 F.Supp. at 197 (citing *Kerr v. United States District Court for Northern District of Calif.*, 511 F.2d 192, 198 (9th Cir.1975)). Instead, the IRS Officers objected to the state trial court's jurisdiction to order them to produce the personnel records, and then argued that production of the records would constitute an unwarranted violation of the Privacy Act. However, the Privacy Act specifically allows for disclosure of protected information pursuant to an order by a court of competent jurisdiction. It does not create any type of privilege for the records, which means that Stewart is not obliged to demonstrate a specific need in order to obtain the records.

This Court would be a court of competent jurisdiction, were it not constrained by the doctrine of derivative jurisdiction and *Touhy*. If Stewart had commenced a direct action in federal court against the agency, the Court could have ordered the IRS Officers to produce the requested records. Nevertheless, after considering Stewart's proffered reason for seeking the personnel records at issue, it is doubtful that this Court would find it necessary to order Graham and Jacobs to produce all of the personnel records. In light of the fact that jurisdiction in this court is limited to that of the state court, however, no decision on the merits of this action is obtainable in its current posture.

### III. CONCLUSION

██ The Court has found that it has limited jurisdiction pursuant to 28 U.S.C. § 1442, which allows a federal officer to remove a civil action brought in a state court against any officer or an agency of the federal government to federal court. Although the entire state court action was included in the removal petition, only the issues surrounding defendant Stewart's motion to compel discovery against the IRS Officers were removable, and consequently, this Court's order is restricted to those issues.

██ Implicit in the federal housekeeping act, the regulations promulgated thereunder, and the federal officer removal statute is the notion that a state court may not properly order the production of documents in the possession of a federal officer, if such production would violate a duty that officer owes in the performance of his or her job. Moreover, sovereign immunity and the Supremacy Clause would also bar the state court from entering such an order. Consequently, the state court lacked jurisdiction to issue the order this Court is asked to vacate. The IRS Officers' motion to vacate the state court's order compelling discovery is welltaken and should be **SUSTAINED**. Because this Court's jurisdiction is derivative of the state court's and because neither of the parties in this action successfully invoked this Court's original jurisdiction, no decision can be rendered on Stewart's motion to compel the production of the IRS records. This cause is now remanded to the Marion Superior Court for further deliberations.

IT IS SO ORDERED.